JACK P. DICANIO (Cal. Bar No. 138782)
Jack.DiCanio@skadden.com
CHRISTINA M. KROKEE (Cal. Bar No. 328885)
Christina.Krokee@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 University Avenue, Suite 1400
Palo Alto, California 94301
T: +1 650 470 4500
F: +1 650 470 4570

ANTHONY PACHECO (Cal. Bar No. 128277)
apacheco@vedderprice.com
**VEDDER PRICE (CA), LLP**
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

BROOKE E. CONNER (*Pro Hac Vice*)
bconner@vedderprice.com
**VEDDER PRICE P.C.**
222 N. LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant Matthew Panuwat*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW PANUWAT,<br><br>Defendant. | Case No. 4:21-cv-06322-WHO<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hearing: January 12, 2022<br>Time: 2:00 P.M.<br>Location: Courtroom 2 – 17th Floor<br>Judge: Hon. William H. Orrick |

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

SEC v. PANUWAT
CASE NO. 21-CV-06322-WHO

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................... 1

STATEMENT OF ISSUES ........................................................................................ 1

INTRODUCTION ...................................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS........................................................ 2

I.      Panuwat's Background............................................................................... 2

II.     Medivation Is Acquired by Pfizer .............................................................. 3

III.    Panuwat's Trade in Incyte ......................................................................... 4

IV.     Alleged Material Nonpublic Information regarding Incyte ......................... 6

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ........................................................................................................... 8

I.      The Complaint Fails to State a Valid Claim for Relief under Exchange Act
        Section 10(b) and Rule 10b-5 .................................................................. 9

        A.      The Complaint Fails to Sufficiently Plead that Panuwat Misappropriated
                Nonpublic Information that Was Material to Incyte ............................... 9

        B.      The Complaint Fails to Sufficiently Plead that Panuwat Breached His Duty
                of Trust or Confidence Owed to Medivation ...................................... 11

        C.      The Complaint Fails to Sufficiently Plead Facts that Panuwat Acted with
                the Requisite Scienter.......................................................................... 12

II.     The Complaint Attempts to State a Claim beyond the SEC's Legal Authority In
        Violation of Panuwat's Constitutional Due Process Rights............................ 15

CONCLUSION .................................................................................................... 20

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- ii -

SEC v. PANUWAT
CASE NO. 21-CV-06322-WHO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. SEC,*
446 U.S. 680 (1980) ................................................................................................. 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................... 8

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ..................................................................................... 8

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ................................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................... 8

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ................................................................................... 16

*Carpenter v. United States,*
484 U.S. 19 (1987) ................................................................................................... 12

*Chiarella v. United States,*
445 U.S. 222 (1980) ................................................................................................. 11

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012) ..................................................................................... 17, 18, 20

*City of Chicago v. Morales,*
527 U.S. 41 (1999) ................................................................................................... 17

*Conservation Force v. Salazar,*
646 F.3d 1240 (9th Cir. 2011) ................................................................................... 7

*Deutsch v. Flannery,*
823 F.2d 1361 (9th Cir. 1987) ................................................................................... 8

*Dirks v. SEC,*
463 U.S. 646 (1983) ................................................................................................... 8

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185 (1976) ........................................................................................... 13, 19

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- ii -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

*Gen. Elec. Co. v. U.S. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995) ...................................................................... 17

*Giaccio v. Pennsylvania*,
   382 U.S. 399 (1966) ....................................................................................... 17

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ......................................................................... 13

*Kelly v. United States*,
   140 S. Ct. 1565, 206 L. Ed. 2d 882 (2020) .................................................. 19

*Landreth Timber Co. v. Landreth*,
   471 U.S. 681 (1985) ....................................................................................... 18

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ........................................................................... 8

*McNally v. United States*,
   483 U.S. 350 (1987) ................................................................................. 18, 19

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ..................................................................... 13

*NLRB v. Bell Aerospace Co.*,
   416 U.S. 267 (1974) ....................................................................................... 18

*SEC v. Fehn*,
   97 F.3d 1276 (9th Cir. 1996) ........................................................................... 9

*SEC v. Goldinger*,
   106 F.3d 409, 1997 WL 21221 (9th Cir. 1997) ............................................ 13

*SEC v. Kirch*,
   263 F. Supp. 2d 1144 (N.D. Ill. 2003) .......................................................... 16

*SEC v. Kornman*,
   391 F. Supp. 2d 477 (N.D. Tex. 2005) .......................................................... 16

*SEC v. Levin*,
   232 F.R.D. 619 (C.D. Cal. 2005) ............................................................. 13, 14

*SEC v. Mark Anthony Longoria*,
   11-CV-0753 (S.D.N.Y.) (JSR) (Feb. 3, 2011) ............................................. 17

*SEC v. McGee*,
   895 F. Supp. 2d 669 (E.D. Penn. 2012) ................................................... 13, 14

*SEC v. Monarch Fund*,
   608 F.2d 938 (2d Cir. 1979) .......................................................................... 10

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- iii -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

*SEC v. Musella,*
578 F. Supp. 425 (S.D.N.Y. 1984) ................................................................... 16

*SEC v. One or More Unknown Traders in Onyx Pharmaceuticals, Inc.,*
296 F.R.D. 241 (S.D.N.Y 2013) ...................................................................... 13

*SEC v. Rorech,*
720 F. Supp. 2d 367 (S.D.N.Y. 2010) .............................................................. 10

*SEC v. Steffes,*
805 F. Supp. 2d 601 (N.D. Ill. 2011) .......................................................... 14, 16

*SEC v. Talbot,*
530 F.3d 1085 ............................................................................................. 9, 16

*SEC v. Truong,*
98 F. Supp. 2d 1086 (N.D. Cal. 2000) ....................................................... 10, 13

*Skilling v. United States*
561 U.S. 358 (2010) ......................................................................................... 18

*United States v. Smith,*
155 F.3d 1051 (9th Cir. 1998) ......................................................................... 13

*United States v. O'Hagan,*
521 U.S. 642 (1997) ...................................................................... 8, 9, 11, 19

**Statutes**

15 U.S.C. § 78j(b) .................................................................................................. 8

18 U.S.C. § 1346 .................................................................................................. 19

**Other Authorities**

17 C.F.R. § 240.10b-5 ............................................................................................ 8

17 C.F.R. § 240.10b5-1(a) ..................................................................... 9, 15, 18

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 1, 8

Federal Rule of Civil Procedure Rule 9(b) ........................................................ 1, 8

H.R. 2655, 117th ................................................................................................. 15

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- iv -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at the time and place noted above, Defendant Matthew Panuwat ("Panuwat") will and hereby does move to dismiss Plaintiff United States Securities and Exchange Commission's ("SEC" or "Plaintiff") Complaint filed on August 17, 2021 (ECF 1) (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## STATEMENT OF ISSUES

Does Plaintiff state a claim under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934?

## INTRODUCTION

In its Complaint, the SEC attempts to improperly expand existing insider trading law to punish innocent conduct without a valid legal basis or fair notice to market participants. The SEC has never before attempted to bring an insider trading case against an individual based solely on the purchase of securities of a company about which neither he nor his employer possessed *any material nonpublic information*. Nor has the SEC ever in its 87-year history brought an insider trading case against an individual alleging that the individual's duty of trust and confidence to his employer prohibited trading in the securities of an unrelated company operating within the same broadly-defined industry. By this action, the SEC has overstepped its enforcement authority.

The SEC filed its single-count Complaint that is the subject of this motion one day short of the expiration of the statute of limitations, based on a single securities trade placed in August 2016. The Complaint alleges insider trading violations based on Panuwat's purchase of Incyte Corporation ("Incyte") securities during a time when his employer, Medivation, Inc. ("Medivation"), was negotiating its potential acquisition with several other companies, a process that had been widely reported in the media and publicly disclosed by Medivation. The Complaint relies on sweeping inferences and contains astonishingly few factual allegations—despite the attenuated and novel theory. Stripped of its "conclusions" (not facts) about what Panuwat allegedly "anticipated," the Complaint falls short of sufficiently pleading several essential elements of insider trading, namely that: (i) the information concerning Medivation's acquisition was material to an unrelated company, (ii) Panuwat breached his duty to Medivation by purchasing securities of an

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 1 -

SEC v. PANUWAT
CASE NO. 21-CV-06322-WHO

unrelated company, and (iii) Panuwat acted with the intent to defraud Medivation when he purchased securities of an unrelated company.

At its core, the Complaint asserts that because Medivation and Incyte were both biopharmaceutical companies with certain broad similarities (without consideration of substantial differences), what is material to Medivation is therefore material to all other companies that could be perceived as potentially similar to it based on subjective criteria established by the SEC. To be clear, Medivation and Incyte did not have any business relationship and did not even view themselves as competitors, which is well documented in their respective SEC filings. The number of companies that could be included under the SEC's subjective criteria, and the basis, time period and circumstances of such inclusion, is entirely unclear and unknowable by any market participant. Allowing the SEC to bring such a claim would unjustly extend government authority without fair notice and contravene present insider trading laws, all in violation of Panuwat's due process rights. The Complaint must, therefore, be dismissed.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS[1]

The SEC complains of a single instance of alleged insider trading by Panuwat based on one securities trade that took place over five years ago, on August 18, 2016. At that time, Panuwat was employed as a business development executive at Medivation, a biopharmaceutical company based in San Francisco, California. (Compl. ¶¶ 1, 15.)

### I. Panuwat's Background

Panuwat was employed by Medivation from September 2014 to January 2017 in a business development role. Panuwat has undergraduate and graduate degrees in the biology and pharmaceutical-related fields as well as an MBA. (Compl. ¶ 14.) In 2016, he had approximately 15 years of experience in the biopharmaceutical industry, including eight years in investment banking and experience in business and strategic development at certain biopharmaceutical companies. (*Id.*)

In 2016, Panuwat's title at Medivation was Senior Director of Business Development.

---

[1] The relevant allegations are all taken from the Complaint and are assumed to be true only for purposes of this motion.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 2 -

SEC v. PANUWAT
CASE NO. 21-CV-06322-WHO

(Compl. ¶ 17.) He reported to Medivation's Chief Financial Officer. (*Id.*) Panuwat's job responsibilities included finding, evaluating, and pursuing strategic opportunities to expand Medivation's drug products and development pipeline. (Compl. ¶ 18.) According to the Complaint, Panuwat closely tracked developments in the biopharmaceutical industry, including stock prices, drug products, development pipelines, and mergers and acquisitions. (*Id.*)

The SEC alleges that Panuwat was aware of the nature of and prohibitions on insider trading through his prior work experience and his obligations at Medivation. (Compl. ¶ 14.) Panuwat signed Medivation's insider trading policy, which prohibited him from trading securities of Medivation "or the securities of another publicly traded company, including all significant collaborators, customers, suppliers, or competitors" on the basis of material nonpublic information. (*Id.*) Notably, the SEC does not allege that Incyte was a collaborator, customer, supplier, or competitor of Medivation.

## II.    Medivation Is Acquired by Pfizer

Prior to April 2016, Medivation was evaluating the possibility of being acquired by another pharmaceutical company. (Compl. ¶ 21.) In April 2016, in the wake of then-recent efforts by a French pharmaceutical company to acquire Medivation, Medivation engaged investment banks to advise the company on strategic options. (*Id.*) Panuwat was involved in Medivation's efforts to explore the company's options, including a possible merger with another company. (Compl. ¶¶ 21, 24, 25.) The SEC does not allege that Medivation's ongoing efforts to explore a possible merger were nonpublic or confidential.

In connection with such efforts, the SEC alleges that Panuwat received and reviewed presentations by Medivation's investment bankers that compared other biopharmaceutical companies to Medivation in various ways. (Compl. ¶ 22.) Such companies included, but were not limited to, Incyte, a publicly traded biopharmaceutical company (Compl. ¶¶ 4, 16, 31.) The SEC does not allege how many presentations were received and reviewed by Panuwat, how many companies were compared to Medivation, the identity or types of companies that were compared to Medivation, the basis of the various comparisons to Medivation, or whether the various comparisons to Medivation were based solely on publicly available information. The SEC alleges

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 3 -

SEC V. PANUWAT
CASE No. 21-CV-06322-WHO

that Panuwat knew that a previous announcement of one acquisition of a biopharmaceutical company in 2015 had resulted in the material increase of the stock prices of both Medivation and Incyte. (Compl. ¶ 22.) But the SEC does not allege any details regarding this one transaction—including the basis of Panuwat's alleged knowledge of any stock price impact or the connection, if any, between the companies involved in that acquisition and Medivation and Incyte, the circumstances of that acquisition and whether its process was publicly disclosed, and whether the Medivation and Incyte stock price movements were statistically correlated to that announcement.

The SEC alleges that in August 2016, Panuwat learned confidential information that Medivation was going to be imminently acquired at a premium to the company's stock price. (Compl. ¶ 26.) On August 12, 2016, Medivation's investment bankers distributed a summary of bids by potential acquirers to various Medivation employees, including Panuwat, indicating that at least five potential acquirers were offering an all-cash acquisition of Medivation at a premium to Medivation's then-current share price, and that they were prepared to move quickly. (Compl. ¶ 27.) On August 14, 2016, Panuwat attended Medivation's board meeting at which the board authorized Medivation's investment bankers to send letters to the final bidders for Medivation and discussed that Monday, August 22, 2016 was the target date to publicly announce the acquisition. (Compl. ¶¶ 28, 29.) On August 18, 2016, Medivation's CEO e-mailed Medivation executives, including Panuwat, to relay that Pfizer had expressed overwhelming interest in acquiring Medivation and that plans had been made to attempt to resolve final details later that day. (Compl. ¶ 30.) The SEC does not allege when in August 2016 it was determined that Medivation was going to be imminently acquired at a premium to the company's stock price and whether this determination occurred after Panuwat's purchase of Incyte securities. Notably, the SEC does not allege whether details regarding the Medivation acquisition process were confidential and nonpublic, or that they were unavailable to market participants, including potential investors of unrelated companies such as Incyte.

### III.    Panuwat's Trade in Incyte

The SEC alleges that on August 18, 2016, Panuwat misappropriated Medivation's confidential information by purchasing out-of-the-money, short-term stock options in Incyte—on

Vedder Price (CA), LLP
Attorneys at Law
Los Angeles

Defendant's Notice of Motion
and Motion to Dismiss

- 4 -

SEC v. Panuwat
Case No. 21-CV-06322-WHO

his work computer—minutes after receiving confidential information from Medivation's CEO regarding the likely acquisition by Pfizer. (Compl. ¶¶ 4, 33.) The SEC does not allege when Panuwat actually read or reviewed such confidential information. Specifically, Panuwat purchased 578 Incyte call option contracts with strike prices of $80, $82.50, and $85 per share and the soonest expiration date of September 16, 2016. (Compl. ¶ 33.) At the time, Incyte's stock price was trading between $76 to $77 per share. (*Id.*) The SEC makes no allegations regarding whether the purchase of short-term call options was unusual or suspicious based on Panuwat's trading practices. The SEC does not allege that the confidential information conveyed to Panuwat on August 18, 2016, contained any material details regarding the final rounds of the Medivation acquisition process, including the price per share that would eventually be offered by Pfizer or the other bidders.

The SEC alleges that Panuwat did not seek preclearance or authorization of his Incyte options trades from anyone at Medivation, nor did he inform anyone at Medivation about his trading. (Compl. ¶ 34.) Notably, the SEC does not allege that Medivation even required Panuwat to seek preclearance or authorization prior to trading in Incyte securities.

On August 20, 2016, Medivation signed a merger agreement with Pfizer for $81.50 per share. (Compl. ¶ 35.) The SEC does not allege when the $81.50 per share offer from Pfizer was first received by Medivation and whether it occurred after Panuwat's purchase of Incyte securities. The SEC alleges that the $81.50 price per share offered by Pfizer for Medivation represented a significant premium over the prior, publicly-known unsolicited acquisition proposal of $52.50 per share by a French pharmaceutical company in April 2016, but is silent regarding any subsequent publicly-known acquisition proposals by large-cap pharmaceutical companies in the months before the Pfizer acquisition of Medivation was announced. (*Id.*)

On August 22, 2016, Medivation publicly announced its forthcoming acquisition by Pfizer. (Compl. ¶¶ 5, 36.) Following the announcement, Medivation's stock price rose by approximately 20%, trading up to $80.62 per share compared to $67.16 per share at closing on the prior trading day. (Compl. ¶ 36.) On the same day Medivation announced the Pfizer acquisition, Incyte's stock price rose by approximately 8%, closing at $81.98 compared to $76.11 at closing on the prior trading day. (Compl. ¶ 37.) The SEC does not allege the number of other companies unrelated to

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

Medivation (mid-cap, biopharmaceutical, or otherwise) that also materially increased on the day of the Medivation acquisition announcement. The SEC alleges that as a result of his trading in Incyte call options, Panuwat generated purportedly ill-gotten gains of $107,066. (Compl. ¶¶ 5, 38.) The SEC does not allege when Panuwat actually sold the Incyte call options, including whether the sale of those options coincided with the Medivation acquisition announcement.

## IV. Alleged Material Nonpublic Information regarding Incyte

The SEC concludes that Panuwat misappropriated confidential information from Medivation regarding its potential acquisition by Pfizer and used that information when he purchased securities of Incyte, *an unrelated biopharmaceutical company that was not viewed as a competitor by Medivation*, in violation of his duty of trust and confidence to Medivation. (*See* Compl. ¶¶ 3, 4.) The Complaint contains staggeringly few factual allegations relating to that conclusion, and offers only a mere few vague, unsupported assertions.

First, the SEC alleges that Panuwat reviewed certain presentations by investment bankers in connection with Pfizer's potential acquisition of Medivation that referred to Incyte as a comparable company to Medivation, because Medivation and Incyte were both mid-cap, oncology-focused companies with a profitable FDA-approved (commercial stage) drug on the U.S. market. (Compl. ¶¶ 22, 35.) This is an arbitrary category without clearly defined or generally accepted parameters. The Complaint does not identify how many presentations the SEC is alleging Panuwat reviewed, whether information regarding the comparable companies included any material nonpublic information, when he received or reviewed such presentations, the context in which Incyte was referenced, or the basis for including Incyte as an alleged "comparable" company.

Second, the SEC claims that Panuwat knew that, in 2016, large-cap pharmaceutical companies were interested in acquiring oncology-focused mid-cap biopharmaceutical companies with commercial-stage drugs and that Medivation and Incyte were two of only a few such companies left to acquire. (Compl. ¶ 22.) The basis of such knowledge, including whether it was related to any material nonpublic information, is entirely unclear. The SEC does not allege whether large-cap pharmaceutical companies were solely interested in acquiring oncology-focused mid-cap biopharmaceutical companies with commercial-stage drugs or whether they were also interested in

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

acquiring other types of companies. The SEC alleges that each acquisition was material to the remaining companies because it made them "potentially more valuable" as acquisition targets and thus could positively affect the stock price of those companies. (*Id*.) Again, the identity of the companies the SEC is vaguely referencing is unknown, and unknowable, and there are no factual allegations supporting the hypothetical potential increase in value of such companies.

Finally, the Complaint does not allege that Panuwat owed a duty of trust and confidence to Incyte, or that Medivation provided Panuwat with material nonpublic information *regarding Incyte*. Rather, the SEC merely "concludes" that information concerning Medivation's potential acquisition was material not only to Medivation, but also to Incyte, despite Incyte's status as an unrelated company that merely operated in the same industry. (Compl. ¶ 31.) The SEC alleges, without support, that Medivation's acquisition would "likely" have a positive impact on Incyte's stock price and asserts that the Medivation acquisition announcement made Incyte a more attractive target for acquisition. (*Id*.) The SEC alleges that Panuwat anticipated that the value of Incyte shares would materially increase when the Medivation acquisition announcement became public, and concludes that he therefore traded on the basis of such material nonpublic information in violation of his duties to Medivation. (Compl. ¶ 4.)

The Complaint insufficiently pleads facts supporting the allegation that Panuwat anticipated any increase in the stock price of Incyte based on Medivation's acquisition, or that there would be any impact on the prospects of Incyte as a future acquisition target as a result of Medivation's acquisition. Even though the SEC alleges that Medivation and Incyte were similar, it does not allege that the stock prices of Medivation and Incyte were ever statistically correlated, including at any point during the months leading up to the Medivation acquisition announcement. Additionally, the SEC does not allege that any oncology-focused biopharmaceutical company was actually acquired shortly following Pfizer's acquisition of Medivation, or that Incyte was ever acquired.

## LEGAL STANDARD

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

(quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While well-pled facts are accepted as true at the motion to dismiss stage, a court may not accept as true labels and legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

When the SEC asserts claims for fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5, the complaint must satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987) (applying Rule 9(b) standard to Sections 10(b) claims).

## ARGUMENT

The Complaint fails to state a claim for violation of Exchange Act Section 10(b) and Rule 10b-5. Section 10(b) makes it unlawful for any person purchasing or selling securities "[t]o use or employ, in connection with the purchase or sale of any security any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 prohibits the omission of "a material fact necessary in order to make [ ] statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.

In order to state a Section 10(b) claim under a theory of misappropriation, the SEC must show that Panuwat (1) was in possession of material nonpublic information, (2) used the information to trade securities, (3) breached a duty of confidentiality he owed to the source of the information, and (4) acted with scienter. *See United States. v. O'Hagan*, 521 U.S. 642, 651–52 (1997); *Dirks v. SEC*, 463 U.S. 646, 654 (1983). "In lieu of premising liability on a fiduciary relationship between company insider and purchaser or seller of the company's stock, the misappropriation theory premises liability on the fiduciary-turned-trader's deception of those who

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 8 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

entrusted him with access to confidential information." *O'Hagan*, 521 U.S. at 652–53.

## I. The Complaint Fails to State a Valid Claim for Relief under Exchange Act Section 10(b) and Rule 10b-5

The Complaint fails to state a valid claim that Panuwat violated Exchange Act Section 10(b) and Rule 10b-5. The SEC improperly concludes, without sufficient factual or legal support, that Panuwat misappropriated confidential information from Medivation and used it to his own benefit by purchasing Incyte stock options, in breach of a duty owed to Medivation. (Compl. ¶¶ 4–5.) The SEC does not and cannot meet its burden in pleading facts supporting the required legal elements, for the following reasons.

### A. The Complaint Fails to Sufficiently Plead that Panuwat Misappropriated Nonpublic Information that Was Material to Incyte

The law requires that to commit insider trading, the trader must be acting on the basis of *material* nonpublic information when making the decision to trade. *See SEC v. Talbot*, 530 F.3d 1085, 1092 (holding that the SEC must show (1) breach of a fiduciary duty arising from a relationship of trust and confidence owed to the source of information on which he traded, and (2) the information on which he traded was material). "Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *SEC v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996). In order to determine whether information is material for purposes of Section 10(b) and Rule 10b-5, courts must look to "the magnitude of the transaction *to the issuer of the securities allegedly manipulated*" and "consider such facts as the size of the two corporate entities and of the potential premiums over market value." *Talbot*, 530 F.3d at 1097 (emphasis added) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988)).

Critically, the SEC must prove that a defendant traded in the securities of an issuer on the basis of material nonpublic information "*about that security or issuer*." 17 C.F.R. § 240.10b5-1(a) (emphasis added). The SEC does not allege that Panuwat or Medivation possessed any actual confidential information *about Incyte* at the time Panuwat purchased Incyte securities. Rather, the SEC is asking the Court to infer that because Panuwat was aware of confidential information regarding one biopharmaceutical company (Medivation), such information was material to some

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 9 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

or all other allegedly similar biopharmaceutical companies (Incyte and an unknown and unstated

amount of potential other companies).  Such a conclusion is unsupported by facts or law.

The SEC does not allege that Medivation's ongoing efforts to explore a potential acquisition or Pfizer's interest in acquiring Medivation were nonpublic or otherwise confidential.  The SEC also does not allege facts supporting its assertion that Panuwat's alleged knowledge of one prior publicly-announced acquisition in the same industry, but not others, informed his decision to purchase Incyte securities.  Nor is such information material.  *See, e.g., SEC v. Truong*, 98 F. Supp. 2d 1086, 1099 (N.D. Cal. 2000) (finding that the SEC did not show how "vague information could have altered the 'total mix' of information available to investors" as required to be material, particularly in light of prior public disclosures); *SEC v. Rorech*, 720 F. Supp. 2d 367, 410 (S.D.N.Y. 2010) ("A generalized confirmation of an event that is 'fairly obvious' to every market participant who was knowledgeable about the company or the particular instrument at issue is not material information."); *SEC v. Monarch Fund*, 608 F.2d 938, 942–43 (2d Cir. 1979) (finding general information that was consistent with market news was not material nonpublic information).  The SEC does not allege that Incyte considered Pfizer's interest in acquiring Medivation to be material to Incyte.

Rather, the SEC pleads only vague conclusions that Panuwat's knowledge of the potential Medivation acquisition was material to the purchase of Incyte securities.  The Complaint improperly concludes that Panuwat believed that each acquisition of an oncology-focused mid-cap biopharmaceutical company "was material to the remaining companies because it made them *potentially* more valuable acquisition targets and *could* thus positively affect the stock price of those companies."  (Compl. ¶ 22 (emphasis added).)  The allegations in the Complaint demonstrate the failing of the SEC's theory that the information was material (or that Panuwat acted with scienter), as it is unknown from the allegations whether or not the news of Medivation's forthcoming acquisition *would* make other biopharmaceutical companies more valuable acquisition targets and *would* positively affect the stock price of other unrelated companies.  The SEC does not allege that the stock prices of Medivation and Incyte or other companies operating in the same industry were ever statistically correlated prior to the Medivation acquisition announcement.  The SEC also fails

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 10 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

to allege facts demonstrating the basis for Panuwat's alleged beliefs regarding the materiality of the information at issue to other companies, or which other companies should be considered the "remaining companies" referred to in the Complaint. Therefore, the SEC cannot establish liability under the misappropriation theory due to the lack of trading on the basis of material, nonpublic information.

**B.     The Complaint Fails to Sufficiently Plead that Panuwat Breached His Duty of Trust or Confidence Owed to Medivation**

The Complaint should be dismissed for failing to sufficiently plead that Panuwat's purchase of securities of Incyte constituted a breach of his duties owed to Medivation. The law requires that to commit insider trading, the trader must be acting in breach of a fiduciary duty or similar duty of trust and confidence owed to the source of the confidential information in question. *See Chiarella v. United States*, 445 U.S. 222, 235 (1980) (rejecting the argument that insider trading under Section 10(b) arises simply as a result of "the mere possession of non-public market information"). Rather, the Court consistently has held that insider trading liability arises only when there is a duty to disclose. *Id.* at 232–33. In *O'Hagan*, the Court similarly maintained the duty requirement by holding that a trader may be liable under the misappropriation theory only when there was a fiduciary or fiduciary-like duty owed by the trader to the source of the information that has been breached by use of such information. 521 U.S. at 652. Without a breach of such duty, liability for insider trading cannot exist.

The Complaint alleges that Panuwat breached his duty to Medivation to keep confidential any material nonpublic information he learned during the course of his employment and to forego any securities trading on the basis of such information. (Compl. ¶ 20.) The Complaint recites Medivation's insider trading policy, which prohibited Medivation employees, including Panuwat, from profiting on the basis of material nonpublic information by purchasing securities of "another publicly traded company, including all significant collaborators, customers, partners, suppliers, or competitors" of Medivation. (*Id.*)

Panuwat did not breach a duty to Medivation, as trading in Incyte securities was not prohibited trading per Medivation's insider trading policy. The Complaint does not allege that

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 11 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

Incyte was a significant collaborator, customer, partner, supplier, or competitor of Medivation, as would be required to violate the policy. Medivation therefore did not contemplate trading in the securities of an unrelated company, such as Incyte, as prohibited trading under the policy. Interpreting the policy's reference to trading in the securities of "another publicly traded company" as broader than trading in the securities of "significant collaborators, customers, partners, supplies or competitors" would ignore the plain language of the policy. Moreover, the SEC does not allege that Panuwat was aware of any confidential information involving Incyte to possibly use in breach of any duty to Medivation. *Compare Carpenter v. United States*, 484 U.S. 19 (1987) (finding insider trading violations based on misuse of confidential employer information involving the securities of the specific companies that were traded). The SEC does not allege facts suggesting that Panuwat or Medivation considered information regarding Medivation's potential acquisition by Pfizer to be confidential information about unrelated companies, or understood trading in Incyte securities to be prohibited by Medivation's policy.

Here, Medivation did not provide Panuwat with any confidential information regarding Incyte that Panuwat then used for his own benefit in violation of his duty to Medivation, nor does the Complaint allege as such. Similarly, the Complaint does not allege that: (i) Panuwat otherwise possessed any material nonpublic information regarding Incyte; (ii) Panuwat owed a fiduciary duty of duty of trust and confidence to Incyte; or (iii) Medivation considered information regarding its potential acquisition by Pfizer to be confidential information regarding unrelated companies, including Incyte. The Complaint wholly fails to plead facts that Panuwat breached his duty to Medivation by purchasing securities of an unrelated company about which he was not provided any material nonpublic information. Accordingly, the Complaint should be dismissed for failure to properly allege that Panuwat breached his duty to Medivation.

C.     **The Complaint Fails to Sufficiently Plead Facts that Panuwat Acted with the Requisite Scienter**

The Complaint should be dismissed for failing to adequately plead facts in sufficient detail to support a finding that Panuwat knew or was reckless in not knowing that his purchase of Incyte securities was done on the basis of misappropriation of material, nonpublic information from

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 12 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

Medivation. The scienter element of a Section 10(b) and Rule 10b-5 violation requires proof of "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 (1976). The scienter requirement encompasses knowing and intentional misconduct, and cannot be supported by mere negligence. *Aaron v. SEC*, 446 U.S. 680, 690 (1980).

The Ninth Circuit has held that the scienter element of Rule 10b-5 and the "manipulative or deceptive" practices element of Section 10(b) of the Exchange Act requires that the government prove that the trader actually used the material nonpublic information in formulating and consummating the trade at issue. *See Truong*, 98 F. Supp. 2d at 1095 (citing *United States v. Smith*, 155 F.3d 1051, 1067–70 (9th Cir. 1998)) ("[T]he government may not rest upon a demonstration that the suspected inside trader bought or sold while in possession of inside information; rather, it must, at a minimum, prove that the suspect used the information in formulating or consummating his trade."). Here, the SEC has pled no facts suggesting that Panuwat actually used the material nonpublic information regarding Medivation's acquisition when he placed his trade in Incyte. In fact, the allegations demonstrate that Medivation had been exploring its strategic options for several months (Compl. ¶ 21) and that its acquisition by Pfizer had not been determined at the time of Panuwat's trade in Incyte. (Compl. ¶ 30.)

Moreover, the SEC may not base insider trading actions on "*strained inferences and speculation.*" *Truong*, 98 F. Supp. 2d at 1098 (citing unpublished decision *SEC v. Goldinger*, 106 F.3d 409, 1997 WL 21221 (9th Cir. 1997)) (finding that a case based on "massive and well-timed" trades by alleged tippees was "weak and speculative" and that "there is a vast difference between circumstantial evidence and pure speculation.") Pleading securities fraud in violation of Rule 10b-5 of the Exchange Act is subject to Rule 9(b)'s heightened pleading requirement. *SEC v. Levin*, 232 F.R.D. 619, 622 (C.D. Cal. 2005) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994)) (stating that in securities fraud actions, the plaintiff "must aver with particularity the circumstances constituting the fraud"); *SEC v. McGee*, 895 F. Supp. 2d 669, 683 (E.D. Penn. 2012) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)) (holding that "securities fraud claims, like other types of fraud claims, have always been subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements"); *SEC v. One or More Unknown Traders in Onyx*

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 13 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

*Pharmaceuticals, Inc.*, 296 F.R.D. 241, 247 (S.D.N.Y 2013) (holding insider trading claims are also subject to Rule 9(b)).

The SEC still bears the burden of pleading sufficient facts with particularity that demonstrate Panuwat acted with scienter, and knowingly misappropriated material, nonpublic information from Medivation regarding Incyte. *SEC v. Levin*, 232 F.R.D. at 622; *SEC v. McGee*, 895 F. Supp. 2d at 683; *SEC v. Steffes*, 805 F. Supp. 2d 601, 618 (N.D. Ill. 2011). The Complaint alleges nothing more than strained inferences and speculation, regarding Panuwat's intent when he purchased Incyte securities. The Complaint contains the following conclusions without sufficient factual support:

- Panuwat "anticipated" that Incyte's stock price "would materially increase when the Medivation acquisition announcement became public." (Compl. ¶ 4.) The Complaint is entirely lacking allegations of facts demonstrating how, when, and why Panuwat reached such a conclusion.

- Panuwat did not seek preclearance or authorization for his Incyte trades. (Compl. ¶ 34.) The Complaint does not allege that Panuwat was required to seek preclearance or authorization from Medivation for trading in Incyte securities.

- Panuwat had never traded Incyte stock or options before. (Compl. ¶ 33.) The Complaint makes no allegations regarding whether or not the type of securities trade was unusual or suspicious in his overall prior trading practices. The Complaint also makes no allegations regarding whether Panuwat had discussed trading in Incyte securities for reasons other than the acquisition of Medivation prior to purchasing Incyte securities.

- Panuwat purchased options in Incyte within minutes of receiving an e-mail on August 18, 2016, relaying Pfizer had expressed overwhelming interest in acquiring Medivation. (Compl. ¶¶ 30, 33.) The Complaint does not allege that Pfizer's interest in acquiring Medivation was confidential and nonpublic leading up to this date. The Complaint also makes no allegations that Panuwat knew any details regarding Pfizer's potential acquisition of Medivation at the time of his purchase. The Complaint makes no allegations why there would have been a sense of urgency to purchase Incyte options on August 18, 2016, prior

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 14 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

to when the final acquisition proposals were submitted by potential acquirors, and when the announcement of a potential acquisition was targeting August 22, 2016.

- Panuwat purchased the Incyte securities from his work computer. (Compl. ¶ 4.)  This fact suggests that Panuwat was **not** acting with the specific intent to deceive his employer, as required to state a claim for insider trading.

The Complaint does not allege facts that indicate Panuwat: (i) knew he was aware of material, nonpublic information regarding Incyte; (ii) knew he was violating a duty owed to Medivation by purchasing Incyte securities; or (iii) intentionally purchased Incyte securities on the basis of the material nonpublic information concerning Medivation's potential acquisition. Therefore, based on the failure to properly allege scienter, the Complaint must be dismissed.

## II.    The Complaint Attempts to State a Claim beyond the SEC's Legal Authority In Violation of Panuwat's Constitutional Due Process Rights

As set forth above, the Complaint fails to state a claim for violation of Section 10(b) and Rule 10(b)(5), as the conduct at issue falls outside of the scope of the rule on its face.  Even apart from this fatal flaw, before this case, no one—not market participants, not courts, not even the SEC itself—ever understood the insider trading laws to prohibit the type of conduct alleged in the Complaint.[2]  As previously discussed, Rule 10b5-1 requires that, in order to demonstrate insider trading, the SEC must prove that a defendant traded in the securities of an issuer on the basis of material nonpublic information *about that security or issuer*."   17 C.F.R. § 240.10b5-1(a)

---

[2] The SEC and other authorities recognize the severe limits of insider trading law, which is loosely based on general federal fraud prohibitions and shaped by case law that varies broadly depending on the facts, circumstances, and jurisdiction of each case.  To attempt to address the widely acknowledged uncertainty and confusion regarding what constitutes insider trading even within the traditional interpretation as discussed herein, the Insider Trading Prohibition Act of 2021 was introduced in the U.S. House of Representatives and passed by a wide bipartisan margin on May 18, 2021.  *See* H.R. 2655, 117th Cong. (2021).  It is now awaiting U.S. Senate action.  The bill would add to the existing federal securities laws a definition of insider trading and specifically make it illegal.  A prior version of the bill passed the U.S. House of Representatives in 2019 but never made it through the U.S. Senate.  In addition, in February 2020, a task force on insider trading created by a then-current SEC commissioner, Robert J. Jackson Jr., and former U.S. Attorney for the Southern District of New York, Preet Bharara, and comprising former federal attorneys and staff, academics, and judges, issued a report advocating for reforms to address the ambiguity and uncertainty of the current insider trading law.  The report found that current insider trading law "has left market participants without sufficient guidance" regarding how to avoid insider trading.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 15 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

(emphasis added).  In other words, the SEC has forbidden "those possessing inside information about a company to trade *in that company's securities*"—not in the securities of some third party. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1000 (9th Cir. 2002) (emphasis added).

We are unable to find *any* legal precedent where the SEC or any court interpreted the Exchange Act to cover conduct like that at issue here.  There are *no* cases previously filed, let alone adjudicated, alleging that the misappropriation theory bars an individual from trading in the securities of a company that has no direct connection to the alleged inside information and merely shares certain subjective similarities.  In other words, there is no legal authority that supports the SEC's theory in the Complaint, namely that confidential information regarding an acquisition involving Company A should also be considered material to Company B (and presumably companies C, D, E, etc.) that operate within the same general industry.

Indeed, a review of prior insider trading cases brought by the SEC for violations of Section 10(b) and Rule 10b-5 pursuant to the misappropriation theory reveals such cases uniformly involve trading on the basis of material, nonpublic information specific to the company in which the trading at issue occurred.  *See, e.g., Talbot*, 530 F.3d at 1092 (holding that director of Company A could be held liable for insider trading in Company B based on confidential information he received concerning a potential acquisition of Company B after its disclosure at a Company A board meeting); *Steffes*, 805 F. Supp. 2d at 607 (action against Company A employees for sharing confidential information about Company A's pending acquisition to family members who traded in such Company A's securities in advance of the acquisition's public announcement); *SEC v. Musella*, 578 F. Supp. 425, 438–39 (S.D.N.Y. 1984) (holding that a law firm's employee breached his duty of confidentiality to the law firm and its clients by misappropriating material nonpublic information about mergers and acquisitions involving the firm's clients); *SEC v. Kornman*, 391 F. Supp. 2d 477, 479 (N.D. Tex. 2005) (action against tax and estate planning advisor for misappropriating information learned from potential clients about such clients' public company employers and trading in those public companies in advance of public announcements of pending acquisitions); *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1151 (N.D. Ill. 2003) (action against member of a "Software Executive Roundtable" for trading based on information provided in confidence by

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 16 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

other member regarding such member's employer); *SEC v. Mark Anthony Longoria*, 11-CV-0753

(S.D.N.Y.) (JSR) (Feb. 3, 2011) (action based on company employees leaking financial and

operational information about their employers' customers and suppliers learned in the course of

employment for the purpose of facilitating trading on material nonpublic information).

Panuwat's due process right to advance notice of the scope and meaning of the law he is

now charged with violating has been infringed by the SEC's theory as alleged in the Complaint. A

law fails to meet the requirements of the Due Process Clause "if it is so vague and standardless that

it leaves the public uncertain as to what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S.

41, 56 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966)). The Due Process

Clause prohibits enforcing a regulation that fails to give *fair notice* or *fair warning* of the conduct

it prohibits or requires. *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1328 (D.C. Cir. 1995). "In

the absence of notice—for example, where the regulation is not sufficiently clear to warn a party

about what is expected of it—an agency may not deprive a party of property by imposing civil or

criminal liability." *Id*. at 1329.

In *Gen. Elec.*, the regulated entity argued that it was not provided fair pre-enforcement

warning of the alleged regulatory violation, claiming the Environmental Protection Agency

("EPA") decided to "to use a citation [or other punishment] as the initial means for announcing a

particular interpretation"—or for making its interpretation clear. *Gen. Elec.*, 53 F.3d at 1328. The

court agreed, concluding that the agency's interpretation was so far from a reasonable person's

understanding of the regulations that the EPA could not have fairly informed the regulated entity

of the agency's perspective. *Id.* at 1330. Accordingly, the court reversed the finding of liability

and related fine, stating that when "regulations and other policy statements are unclear, where the

petitioner's interpretation is reasonable, and where the agency itself struggles to provide a definitive

reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate

interpretation of the regulations, and may not be punished." *Id.* at 1334.

Similarly, in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012), the

Court was asked to consider a Department of Labor interpretation of a federal statute and related

agency regulations. Although the Court acknowledged that it typically defers to an agency's

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 17 -

SEC V. PANUWAT
CASE No. 21-CV-06322-WHO

interpretation of its own ambiguous regulations, the Court withheld giving the agency's decision any deference based on the lack of fair warning provided by the agency regarding the prohibited conduct. *Christopher*, 567 U.S. at 156.

Here, too, the SEC is using federal court litigation as the *initial means* of announcing a new interpretation of the type of conduct it considers to be prohibited by Section 10(b) and Rule 10b-5. Such interpretation is not supported by the language of Section 10(b) or Rule 10b-5 and is belied by the plain language of the agency's promulgated regulation in Rule 10b5-1, which describes insider trading as trading in the securities of an issuer on the basis of material nonpublic information "*about that security or issuer.*" 17 C.F.R. § 240.10b5-1(a). "It is axiomatic that the starting point in every case involving construction of a statute is the language itself." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985) (internal quotations and citations omitted). The SEC should not be permitted to advance what amounts to new regulation through its enforcement arm.

In cases of such governmental overreach, where serious reliance interests exist and due process is not provided, it is the role of the courts to uphold the law as is stands, not as the regulators wish it would be. *See, e.g., McNally v. United States*, 483 U.S. 350, 360 (1987) (declining to extend the scope of the federal mail fraud statute "rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure"); *Skilling v. U.S.*, 561 U.S. 358, 406 (2010) (instructing courts "to avoid constitutional difficulties by [adopting a limiting interpretation] if such a construction is fairly possible"); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 295 (1974) (suggesting that an agency should not change an interpretation in an adjudicative proceeding where doing so would impose "new liability . . . on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements"); *Christopher*, 567 U.S. at 158 (declining to defer to an agency's interpretation of its own ambiguous regulations due to the "risk that agencies will promulgate vague and open-ended regulations that they can later interpret as they see fit").

*McNally*, although a criminal case, is instructive and analogous to the situation presented here. In *McNally*, the government charged two individuals with violating the federal mail fraud statute pursuant to the theory that defendants had defrauded the citizens and the government of the

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 18 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

Commonwealth of Kentucky of the right to honest services by public officials. 483 U.S. at 352. The Court, recognizing the government's attempt to improperly expand the scope of conduct prohibited by federal law, reversed the defendants' convictions, after analyzing the statutory history and finding that while the mail fraud statute clearly protects property rights, it did not explicitly extend to the "intangible right of the citizenry to good government." *Id*. at 356. In so holding, the Court specifically declined to interpret the federal mail fraud statute "in a manner that leaves its outer boundaries ambiguous" and stated that "[i]f Congress desires to go further, it must speak more clearly than it has." *Id.* at 360. Accordingly, Congress responded to *McNally* by "enacting a law barring fraudulent schemes 'to deprive another of the intangible right of honest services'— regardless of whether the scheme sought to divest the victim of any property." *Kelly v. United States*, 140 S. Ct. 1565, 1571, 206 L. Ed. 2d 882 (2020) (citing 18 U.S.C. § 1346).

So too here must the courts interpret the securities laws and SEC rules enacted thereunder as written. *O'Hagan*, 521 U.S. at 651 (citing *Hochfelder*, 425 U.S. at 214) ("Liability under Rule 10b–5, our precedent indicates, does not extend beyond conduct encompassed by § 10(b)'s prohibition."). The SEC should not be permitted to advance litigation based on conduct that is not contemplated by statute, existing regulations or prior judicial or agency interpretation. Should it wish to prohibit such conduct, it must do so through future legislation and/or rulemaking.

It is entirely unclear what the parameters of the insider trading laws are or will be if the SEC is allowed to proceed pursuant to its novel theory. How would one determine which companies could be viewed by the SEC as "comparable" and how broad is the scope of the same "industry" for such purposes? Would trading in the securities of all "industry" "comparable" companies be prohibited when in receipt of any material nonpublic information? If not all, which ones? Under what circumstances? If prior acquisitions in an "industry" are required to have occurred to make a subsequent acquisition material to the remaining "comparable" companies, how many acquisitions must have previously occurred? Within what time period? What if other "comparable" company stock prices did not react uniformly or consistently to prior acquisition announcements? How would one determine whether "comparable" companies are similar enough that they might potentially become more valuable acquisition targets subsequent to the announcement of an

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 19 -

SEC V. PANUWAT
CASE NO. 21-CV-06322-WHO

"industry" acquisition?  How would one conclude that a "comparable" company has in fact become a more valuable acquisition target based on the announcement of an "industry" acquisition?  Would potential acquirors need to publicly disclose their acquisition interest in a "comparable" company following the announcement of an "industry" acquisition?  What if no acquisition interest was reported for such "comparable" company subsequent to the announcement of an "industry" acquisition?  Would the one-day stock price performance of such "comparable" company be considered evidence of acquisition interest?  What if such one-day stock price performance of the "comparable" company was influenced by other factors or simply consistent with general market trends?  The existing insider trading laws do not support the weight of the SEC's new theory.  *See Christopher*, 567 U.S. at 158–59 ("It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference.").  Accordingly, the Complaint should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, Defendant Matthew Panuwat respectfully requests that the Court dismiss the Complaint.


Dated:  November 1, 2021

VEDDER PRICE (CA), LLP


By: _____

Attorneys for Defendant
MATTHEW PANUWAT

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS

- 20 -

SEC v. PANUWAT
CASE NO. 21-CV-06322-WHO