JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
CAROLINE VAN NESS (SBN 281675)
Caroline.VanNess@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

JAMES W. SPERTUS (SBN 158925)
jim@spertuslaw.com
ANTHONY PACHECO (SBN 128277)
apacheco@spertuslaw.com
PAYTON LYON (SBN 305763)
payton@spertuslaw.com
SPERTUS, LANDES & JOSEPHS, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, California 90017
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

Attorneys for Defendant
MATTHEW PANUWAT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW PANUWAT, <br><br> Defendant. | Case No.: 3:21-CV-06322-WHO <br><br> **DEFENDANT'S MOTION IN LIMINE REGARDING IMPROPER IMPEACHMENT EVIDENCE** <br><br> DATE: March 22, 2024 <br> TIME: 1:30 p.m. <br> CTRM: 2 <br><br> TRIAL: March 25, 2024 |

## INTRODUCTION

Defendant Matthew Panuwat seeks an order[1] precluding the SEC from introducing evidence about a 2015 Consent Order that a company founded by defense expert Michiel McCarty entered into with the State of Connecticut's Department of Banking (the "Consent Order").[2]

Fed. R. Evid. 608(b) prohibits using extrinsic evidence of prior conduct to attack a witness's credibility and only permits cross-examination about prior conduct that is probative of truthfulness, so it forbids introducing the Consent Order and cross-examining Mr. McCarty about the underlying allegations, which have nothing to do with his credibility.  Fed. R. Evid. 403 also prohibits introducing the Consent Order or any evidence about it because any modicum of relevance would be substantially outweighed by the prejudicial impact of the Consent Order and would result in a mini-trial on the underlying facts.

The defense has diligently attempted to resolve this issue informally.  On February 23, 2024, counsel for Mr. Panuwat asked the SEC to confirm that it also understood that Rules 608(b) and 403 do not permit using the Consent Order to cross-examine Mr. McCarty.  (*Id.* at ¶¶ 2, 4.)  Counsel for Mr. Panuwat followed up on February 29, 2024.  (*Id.* at ¶ 5.)  The SEC responded on March 4, 2024 and proposed that the parties confer about this issue and others on March 7 or March 8.  (*Id.*)  On March 8, 2024, the parties met and conferred by videoconference.  (*Id.*)  At that time, the SEC would not agree that using the Consent Order to examine Mr. McCarty was improper.  (*Id.* at ¶ 6.)  Rather, the SEC indicated that it might use the Consent Order on cross-examination, including if Mr. McCarty

---

[1] Because trial in this case begins in less than two weeks, Defendant has not noticed this motion pursuant to Local Rule 7-2 but will be prepared to discuss this issue at the March 22, 2024, hearing, or any other time that is convenient for the Court.

[2] On April 24, 2015, Mr. McCarty's company, M.M. Dillon & Co., LLC, ("Dillon"), entered into the Consent Order.  (Decl. of Anthony Pacheco In Support of Motion in Limine ("Pacheco Decl.") ¶¶ 2-3.)  The Consent Order states that Connecticut's Department of Banking alleged that "at various times from approximately early 2009 until April 14, 2015, Dillon employed unregistered agents who affected securities transactions in or from this state.  Dillon took curative measures to register such individuals as agents under the Act, and the last agent became registered on April 14, 2015." (*Id.* at ¶ 3.)  The Consent Order expressly states that Dillon did <u>not</u> admit the Department of Banking's allegations.  (*Id.*)  Dillon agreed to pay a fine of $2,700.  (*Id.*)

opines that the instant case is dissimilar to other Rule 10b enforcement actions. (*Id.*) The SEC stated it would only raise the issue "briefly," if it chose to raise it. (*Id.*)

When pressed for their theory of relevance, counsel for the SEC stated only that the Consent Order and the allegations in this case both involve "securities laws." (*Id.* at ¶ 8.) They could not provide any substantive overlap between the Section 10(b) claim in this action and the Connecticut state statute requiring registration of agents. (*Id.*) Moreover, Mr. Panuwat's counsel explained that: the Consent Order matter is almost ten years old; that matter has nothing to do with Mr. McCarty's credibility; and neither Mr. McCarty nor his company admitted any facts at all. (*Id.* at ¶ 9.)

Despite those attempts to persuade the SEC, it has maintained that position, so Mr. Panuwat brings this motion in an effort to resolve this issue before trial. (*Id.* at ¶ 10.)

## ARGUMENT

**Fed. R. Evid. 608(b) prohibits the SEC from introducing the Consent Order or questioning Mr. McCarty about it or about the underlying allegations.** Rule 608(b) prohibits introducing extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," so the SEC cannot introduce the Consent Order to attack Mr. McCarty's credibility. *See United States v. Little*, No. CR 08-0244 SBA, 2012 WL 2563796, at *3 (N.D. Cal. June 28, 2012) ("[W]hile Rule 608(b) allows cross-examination about specific bad acts that concern the witness's credibility, it forbids extrinsic evidence to prove the specific bad act occurred." (internal quotation marks omitted)); Fed. R. Evid. 608 Advisory Committee's Note to 2003 Amendment (" Rule 608(b) bars any reference to the consequences . . . of an alleged bad act.").

The SEC also cannot question Mr. McCarty about the Consent Order or the underlying allegations. In addition to prohibiting extrinsic evidence of prior specific conduct, Rule 608(b) prohibits cross-examination about prior conduct unless the conduct is "probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Civ. P. 608(b); *accord United States v. Colbert*, 116 F.3d 395, 396 (9th Cir. 1997) (emphasis added) (quoting *United States v. Reid*, 634 F.2d 469, 473 (9th Cir.1980)). Generally, only conduct involving a false statement or dishonesty is probative of a witness's truthfulness. *See Colbert*, 116 F.3d at 396 (finding that Fed. R. Evid. 608 and 609 prohibited

Defendant's Motion in Limine                                      Case No.: 3:21-cv-06322-WHO

1  impeaching witness with prior misdemeanor conviction for lewd conduct because it involved "neither
2  dishonesty nor a false statement"); *cf. United States v. Bundy*, No. 2:16-CR-46-GMN-PAL, 2017 WL
3  3496451, at *3 (D. Nev. Aug. 15, 2017) (finding that agent's alleged arrest for conducting a private
4  investigation without a license did "not appear to be probative of [his] character for truthfulness or
5  untruthfulness as would be required under FRE 608(b).").

6  Neither the Consent Order nor the underlying allegations are probative of Mr. McCarty's
7  character for truthfulness.  The alleged conduct—employing unregistered agents—was an
8  administrative issue that was resolved without any factual findings.  It had nothing to do with
9  fraudulent or dishonest conduct and does not otherwise suggest that Mr. McCarty is untruthful.  More
10 importantly, the allegations underlying the Consent Order addressed conduct by Dillon, not Mr.
11 McCarty himself, and Dillon resolved the issues without admissions of any kind.  Consistent with
12 Rule 608(b), the SEC cannot use the Consent Order for any purpose at trial.

13 **Fed. R. Evid. 403 also prohibits the SEC from using the Consent Order at trial.**  Any
14 probative value of the Consent Order and underlying conduct is substantially outweighed by the
15 danger of unfair prejudice.  The alleged conduct occurred over nine years ago, so its relevance has
16 been "eroded by the passage of time."  *See United States v. Young*, No. CR 10-00923(c) SJO, 2013
17 WL 12218750, at *2 (C.D. Cal. Nov. 25, 2013) (denying government's motion to admit evidence that
18 witness had committed perjury 14 years prior).  The failure-to-register allegations in the Consent Order
19 are also very different than the misappropriation accusations in this case, which further undermines
20 any relevance arguments the SEC could make.  Any minimal probative value of the Consent Order is
21 vastly outweighed by the impact the resulting mini trial on the underlying facts would have on the trial
22 issues.  *See* Fed. R. Evid. 403.

23 In *Sheesley v. Cessna Aircraft Co.*, 2006 WL 3042793 (D.S.D. Oct. 24, 2006), a case
24 addressing almost the precise issue presented in this motion, the court determined that Rules 608(b)
25 and 403 prohibited a party from impeaching an expert based on that expert's prior consent decree with
26 the FAA.  In particular, it found that the consent decree at issue in that case related to the expert's non-
27 criminal violations of federal aviation regulations and was therefore not probative of the expert's
28 truthfulness "because nothing surrounding the facts of the consent decree indicate that [the expert] is

3

an untruthful person." *Id.* at *2. The court in *Sheesley* also rejected the argument that the witness's status as an expert permitted cross examination related to the consent decree, because the consent decree was "remote in time" and because "permitting inquiry into this issue [would] create an unnecessary mini-trial regarding what rules [the expert] was charged with violating, what rules he in fact admitted to violating, and why he conceded to violating those rules." *Id.* (citations omitted). Those exact same concerns are present here.

**The SEC's proposed basis for using the Consent Order is inappropriate.** Mr. McCarty will testify consistent with the Court's order that he "may corroborate that insider trading cases typically involve trading stock of the company whose MNPI was learned by the defendant." (Pretrial Rulings on Motions in Limine (ECF No. 126) at 14.) As the Court ruled, that testimony accurately reflects the state of the law. (*Id.*) For the SEC to then cross-examine Mr. McCarty about the Consent Order when he testifies to that fact is not appropriate. This case involves trading that the SEC alleges violated Rule 10b–5, while the Consent Order involved employee licensing. The SEC is wrong to argue that the Consent Order relates to "securities laws" at all, other than Connecticut's administrative licensing requirements for securities trading firms. Whether Mr. McCarty was aware of the intricacies of Connecticut Department of Banking regulations does not matter in this case. What matters is that Mr. McCarty's expertise about federal securities laws and enforcement actions qualifies him to render accurate opinions about the state of that law.

## CONCLUSION

For the foregoing reasons, Mr. Panuwat respectfully requests that the Court prohibit the SEC from introducing the Consent Order or questioning Mr. McCarty about it or its underlying allegations.

DATED: March 12, 2024         SPERTUS, LANDES & JOSEPHS, LLP

By: */s/ Anthony Pacheco*
Anthony Pacheco
Attorneys for Defendant MATTHEW PANUWAT

DATED: March 12, 2024         SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: */s/ Jack P. DiCanio*
Jack P. DiCanio
Attorneys for Defendant MATTHEW PANUWAT