1  **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
   Jack P. DiCanio (SBN 138782) Jack.DiCanio@skadden.com
2  Caroline Van Ness (SBN 281675) Caroline.VanNess@skadden.com
   Joshua S. Brown (SBN 344711) Joshua.Brown@skadden.com
3  Andrew Woo (SBN 341604) Andrew.Woo@skadden.com
   525 University Avenue, Suite 1400
4  Palo Alto, California 94301

5  **SPERTUS, LANDES & JOSEPHS, LLP**
   James W. Spertus (SBN 159825) jspertus@spertuslaw.com
6  Anthony Pacheco (SBN 128277) apacheco@spertuslaw.com
   Kirsi Luther (SBN 347279) kluther@spertuslaw.com
7  617 West 7th Street, Suite 200
   Los Angeles, California 90017
8
   Attorneys for Defendant
9  Matthew Panuwat

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13

   Securities and Exchange Commission,        Case No. 3:21-cv-6322-WHO
14
              Plaintiff,                       **DEFENDANT'S OPPOSITION TO THE**
15                                             **SEC'S MOTION TO IMPOSE**
         v.                                    **REMEDIES**
16
   Matthew Panuwat,                            Filed:     June 18, 2024
17                                             Hearing:   August 7, 2024
              Defendant.                       Time:      TBD
18                                             Judge:     Hon. William H. Orrick

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................ 1

II.     LEGAL STANDARD ........................................................................... 2

III.    ARGUMENT ...................................................................................... 3

        A.     The Court should not impose an officer/director bar of any duration ......... 3

               1.     The *Patel* factors do not support imposition of an
                      officer/director bar. ................................................................... 4

                      a.     Egregiousness ............................................................ 4

                      b.     The defendant's repeat offender status ............................. 6

                      c.     Role or position .......................................................... 7

                      d.     Degree of scienter ....................................................... 8

                      e.     Economic stake ........................................................... 10

                      f.     Likelihood of future misconduct ...................................... 10

                      g.     Lack of stealth ........................................................... 15

               2.     A permanent officer/director bar is overbroad. ........................... 16

        B.     The Court should impose a civil monetary penalty at most equal to
               the amount of Mr. Panuwat's trading gain. ............................................. 18

        C.     No injunction against future securities violations is necessary. ................ 20

IV.     CONCLUSION .................................................................................. 20

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*Aaron v. SEC,*
    446 U.S. 680 (1980) (Burger, C.J., concurring) ............................................................ 12, 16

5

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,*
    125 F.R.D. 51 (S.D.N.Y.1989) ............................................................................................... 10

6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .............................................................................. 16

7

*Natural Resources Defense Council, Inc. v. Winter,*
    508 F.3d 885 (9th Cir. 2007), *rev'd on other grounds by Winter v. Natural*
    *Resources Defense Council, Inc.,* 555 U.S. 7 (2008) .......................................................... 2

*Perez v. Discover Bank,*
    74 F.4th 1003 (9th Cir. 2023) ................................................................................................ 9

*SEC v. All. Transcription Servs., Inc.,*
    No. CV08-1464-PHX-NVW, 2009 WL 5128565 (D. Ariz. Dec. 18, 2009) ......................... 17

*SEC v. Bankosky,*
    No. 12 CIV. 1012 HB, 2012 WL 1849000 (S.D.N.Y. May 21, 2012) ...................... 6, 7, 8, 19

*SEC v. Bausch & Lomb, Inc.,*
    565 F.2d 8 (2d Cir. 1977) ........................................................................................................ 4

*SEC v. Bechtolsheim,*
    24-cv-01845 (N.D. Cal. Mar. 26, 2024) [https://www.sec.gov] ........................................... 10

*SEC v. Berrettini,*
    218 F. Supp. 3d 754 (N.D. Ill. 2016) .................................................................................... 19

*SEC v. Boey,*
    No. 07-CV-39-SM, 2013 WL 3805127 (D.N.H. July 22, 2013) ........................................... 6

*SEC v. Carr,*
    No. 3:18-CV-1135 (SRU), 2020 WL 13303131 (D. Conn. Jan. 10, 2020) .......................... 17

*SEC v. Chan,*
    465 F. Supp. 3d 18 (D. Mass. 2020) ...................................................................................... 6

*SEC v. Chapman,*
    826 F. Supp. 2d 847 (D. Md. 2011) ................................................................................... 5, 6

*SEC v. Cooperman,*
    16-cv-5043 (E.D. Pa. Sept. 21, 2016) [https://www.sec.gov] ............................................. 10

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

ii

*SEC v. Daubenspeck,*
    469 F. Supp. 3d 859 (N.D. Ill. 2020) ................................................................. 19

*SEC v. Dibella,*
    No. 3:04CV1342 (EBB), 2008 WL 6965807 (D. Conn. Mar. 13, 2008)................................. 6

*SEC v. Fehn,*
    97 F.3d 1276 (9th Cir. 1996)........................................................................... 2

*SEC v. First City Financial Corp.,*
    890 F.2d 1215 (D.C. Cir. 1989) ............................................................... 1, 9, 14

*SEC v. First Pac. Bancorp,*
    142 F.3d 1186 (9th Cir. 1998)......................................................................... 3, 16

*SEC v. Gowrish,*
    No. C 09-05883 SI, 2011 WL 2790482 (N.D. Cal. July 14, 2011), *aff'd*, 510 F.
    App'x 588 (9th Cir. 2013)............................................................................. 3, 19

*SEC v. Gunn,*
    No. 3:08-CV-1013-G, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010)...................... 5, 15, 19

*SEC v. Hilsenrath,*
    No. C 03-03252 WHA, 2009 WL 1855283 (N.D. Cal. June 29, 2009)................................. 13

*SEC v. Ingoldsby,*
    No. CIV. A. 88-1001-MA, 1990 WL 120731 (D. Mass. May 15, 1990) .............. 4, 14, 16, 17

*SEC v. Jasper,*
    883 F. Supp. 2d 915 (N.D. Cal. 2010) ........................................................ 4, 13, 17

*SEC v. Johnston,*
    368 F. Supp. 3d 247 (D. Mass. 2019) ................................................................. 17

*SEC v. Kinnucan,*
    9 F. Supp. 3d 370 (S.D.N.Y. 2014)................................................................... 10

*SEC v. Loomis,*
    17 F. Supp. 3d 1026 (E.D. Cal. 2014) ................................................................. 20

*SEC v. Loudon,*
    24-cv-00622 (S.D. Tex. Feb. 22, 2024) [https://www.sec.gov]............................... 10

*SEC v. McClellan,*
    10-cv-5412 (N.D. Cal. Nov. 30, 2010) [https://www.sec.gov]............................... 10

*SEC v. Mellert,*
    No. C03-0619 MHP, 2006 WL 927743 (N.D. Cal. Mar. 29, 2006) ........................ 19

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

DEFENDANT'S OPPOSITION TO THE SEC'S REMEDIES MOTION
Case No. 3:21-cv-6322-WHO

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980) ................................................................... 2, 18, 20

*SEC v. Pallais*,
   No. 08 CIV. 8384, 2010 WL 2772329 (S.D.N.Y. July 9, 2010), *modified on*
   *other grounds by* 2010 WL 5422531 (S.D.N.Y. Dec. 23, 2010) ............................. 3

*SEC v. Pardue*,
   367 F. Supp. 2d 773 (E.D. Pa. 2005) ............................................................ 19

*SEC v. Patel*,
   61 F.3d 137 (2d Cir. 1995) ................................................................... *passim*

*SEC v. Prakash*,
   No. 23-CV-03300-BLF, 2024 WL 781037 (N.D. Cal. Feb. 26, 2024) ....................... 3

*SEC v. Retail Pro, Inc.*,
   No. 08CV1620-WQH-RBB, 2011 WL 13186014 (S.D. Cal. June 23, 2011) ............... 13

*SEC v. Rosenthal*,
   426 F. App'x 1 (2d Cir. 2011) ................................................................... 10

*SEC v. Sabrdaran*,
   252 F. Supp. 3d 866 (N.D. Cal. 2017) ..................................................... 4, 7, 12, 13

*SEC v. Sargent*,
   329 F.3d 34 (1st Cir. 2003) ...................................................................... 15

*SEC v. Selden*,
   632 F. Supp. 2d 91 (D. Mass. 2009) ........................................................... 4, 17

*SEC v. Shah*,
   No. 92 CIV. 1952 (RPP), 1993 WL 288285 (S.D.N.Y. July 28, 1993) ....................... 10

*SEC v. Snyder*,
   No. CIVAH-03-04658, 2006 WL 6508273 (S.D. Tex. Aug. 22, 2006) ...................... 14

*SEC v. Softpoint, Inc.*,
   958 F. Supp. 846 (S.D.N.Y. 1997) ............................................................ 5, 14

*SEC v. Soroosh*,
   166 F.3d 343 (9th Cir. 1998) ..................................................................... 19

*SEC v. Suman*,
   684 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................... 15

*SEC v. Svoboda*,
   409 F. Supp. 2d 331 (S.D.N.Y. 2006) ........................................................ 10, 19

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

iv

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*SEC v. Wang*,
  944 F.2d 80 (2d Cir.1991) ........................................................................................ 10

*SEC v. Wyly*,
  56 F. Supp. 3d 394 (S.D.N.Y. 2014) ....................................................................... 10

*SEC v. Yun*,
  148 F. Supp. 2d 1287 (M.D. Fla. 2001) ................................................................... 19

*SEC v. Zubkis*,
  No. 97 CIV 8086 JGK, 2000 WL 218393 (S.D.N.Y. Feb. 23, 2000) ...................... 13

*Waldman Pub. Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994) ................................................................................. 2, 16

**Statutes**

15 U.S.C. § 78u-1 ........................................................................................................ 18

15 U.S.C. § 78u(d)(2) ............................................................................................ 3, 16

**Other Authorities**

Jayne W. Barnard, *Rule 10B-5 and the "Unfitness" Question*,
  47 Ariz. L. Rev. 9, 48 (2005) .................................................................................... 7

*Egregious*, Merriam-Webster (Online ed. 2024) ......................................................... 4

*Egregious*, Black's Law Dictionary (11th ed. 2019) .................................................... 4

*Egregious*, Cambridge Dictionary (Online ed. 2024) .................................................. 4

DEFENDANT'S OPPOSITION TO THE SEC'S REMEDIES MOTION
Case No. 3:21-cv-6322-WHO

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction[1]

The SEC seeks the maximum possible penalties—a lifetime officer/director bar and injunction, and a three-times civil penalty—for a first-time offender charged in a novel case whose liability finding was based upon a single trade. Those penalties are unwarranted. The SEC provides no evidence that Mr. Panuwat is likely to engage in future misconduct, so its proposed penalties are excessive and out of step with the penalties issued by other courts in similar cases.

An appropriate penalty in this case is a civil penalty of $107,065.80, the amount of Mr. Panuwat's trading profit. That penalty is appropriate because this is Mr. Panuwat's first offense, because he will not engage in future misconduct, and because it is consistent with like cases.

Mr. Panuwat has three decades of experience complying with securities laws.  With an investing history that began in high school, and now two decades of professional experience, Mr. Panuwat's Incyte trade is the first and only time, in thirty years, that Mr. Panuwat has been charged with a violation of securities laws. As the SEC and this Court both recognize, this novel case represents the first time the SEC has objected to a trade like Mr. Panuwat's. Nor did Mr. Panuwat believe that Medivation would have objected to the trade either. In fact, the trial record does not contain evidence from anyone speaking on behalf of Medivation and confirming that his trade was disallowed.  The SEC's request for maximum penalties fails to recognize that its case against Mr. Panuwat was a pilot action testing the viability of its groundbreaking extension of securities fraud to target shadow trading. This fact alone is mitigating. As the Court considers an appropriate penalty, it is also necessary to recognize the actual context in which the trade occurred.

Though Mr. Panuwat preserves his post-trial briefing and appellate arguments, this brief is not the place to rehash those arguments except as they specifically intersect with the issues here. *See SEC v. First City Financial Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989) (a securities law defendant is "not to be punished because they vigorously contest the government's accusations"). Even accepting the jury's verdict, the SEC's maximum penalty request is materially

---

[1] Unless otherwise noted, in quotations from legal sources, all emphasis is added and all citations internal quotation marks, and alterations are omitted.

disproportionate to the facts of this case and represents a significant departure from the applicable legal standard and like cases. The majority of the factors the Court must consider either weigh in Mr. Panuwat's favor or are neutral or inapplicable. And as to the core inquiry, the likelihood of future misconduct, the SEC has no evidence that contradicts what is plain from the facts of this case: This case was brought upon a single trade under a groundbreaking theory. Thus, the maximum penalty is not warranted and would be overbroad. Because there is no likelihood that Mr. Panuwat will commit any future violation, a permanent officer/director bar is not warranted. But if the Court disagrees, a bar of shorter duration would be more appropriate than a permanent one.

Further, the SEC's request for a civil penalty of a three times multiplier is also significantly out of step with what other courts have ordered on similar facts.  In this case, a civil penalty equal to Mr. Panuwat's trading profit is appropriate to accomplish deterrence and punishment.  The Court should reject the SEC's push for maximum penalties in this novel case for a first-time offender. Mr. Panuwat respectfully requests the Court impose remedies that recognize those unique features of the facts before it.

## II.   Legal Standard

Federal courts consider a set of overlapping factors in deciding whether to impose an injunction, an officer/director bar, and the amount of civil penalties.

To impose an injunction, a district court must find a "reasonable likelihood of future violations of the securities law," a standard that requires consideration of five factors:

> (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.

*SEC v. Fehn*, 97 F.3d 1276, 1295–96 (9th Cir. 1996) (quoting *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) (hereinafter *Murphy* factors)). In applying those five factors, the Court abuses its discretion by ordering relief that is not "narrowly tailored to fit specific legal violations." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994); *Natural Resources Defense Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007), *rev'd on other grounds by Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

2

To impose an officer/director bar, the Court must find that the defendant's "conduct demonstrates unfitness to serve as an officer or director of any such issuer." 15 U.S.C. § 78u(d)(2). In making that assessment, the Court considers the six "*Patel*" factors:

> (1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

*SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (adopting factors as listed in *SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995)).

In assessing whether and how much of a civil penalty to impose, the Court considers:

> (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the defendant's financial worth; (4) whether the defendant concealed his trading; (5) what other penalties arise as the result of the defendant's conduct; and (6) whether the defendant is employed in the securities industry.

*SEC v. Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at *9 (N.D. Cal. July 14, 2011), *aff'd*, 510 F. App'x 588 (9th Cir. 2013).

## III.  Argument

The Court should impose a penalty equal to Mr. Panuwat's profits of $107,065.80 and nothing more. That penalty is proportionate to the misconduct and appropriately tailored to the circumstances. Indeed, a penalty equal to Mr. Panuwat's profits would be fully in line with similar cases. An officer/director bar of any length, in contrast, would be extreme. The majority of the *Patel* factors weigh in Mr. Panuwat's favor, most notably that Mr. Panuwat is a first-time offender who was charged for a single trade under a novel theory of insider trading.

### A.  The Court should not impose an officer/director bar of any duration.

An officer/director bar of any time period is not warranted because there is no evidence that Mr. Panuwat is likely to reoffend, let alone "imminently," as required to impose the sanction. A bar is a severe sanction that is "rarely awarded," *SEC v. Prakash*, No. 23-CV-03300-BLF, 2024 WL 781037, at *9 (N.D. Cal. Feb. 26, 2024), and "should not be . . . imposed lightly," *SEC v. Pallais*, No. 08 CIV. 8384, 2010 WL 2772329, at *10 (S.D.N.Y. July 9, 2010), *modified on other grounds by* 2010 WL 5422531 (S.D.N.Y. Dec. 23, 2010). Imposition of this remedy requires not only

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

3

"positive proof of a realistic likelihood that past wrongdoing will recur," *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir. 1977), "but also a demonstration that recurring violations are a relatively imminent threat," *SEC v. Ingoldsby*, No. CIV. A. 88-1001-MA, 1990 WL 120731, at *2 (D. Mass. May 15, 1990).

This severe penalty is not appropriate under an analysis of the *Patel* factors because Mr. Panuwat is a first-time offender, whose violation of the law consisted of a single trade, and who was charged in a first-of-its-kind case. He will not violate the law again, so a severe penalty is not warranted. A severe penalty would also be out of step with other cases. For instance, in *SEC v. Jasper*, 883 F. Supp. 2d 915, 928-29 (N.D. Cal. 2010), the Court imposed a two-year officer/director bar on a CFO who engaged in an "ongoing pattern of conduct" over a five-year period. By comparison, Mr. Panuwat was found liable for a single trade. In addition, an officer/director bar is not narrowly tailored to fit the circumstances of the case. If the Court nonetheless concludes that a bar is necessary, there are better means of ensuring that Mr. Panuwat will not engage in shadow trading. Finally, if the Court is inclined to impose an officer/director bar, one of permanent duration is unduly punitive on these facts.

### 1. The *Patel* factors do not support imposition of an officer/director bar.

#### a. Egregiousness

The first *Patel* factor is egregiousness. An egregious fraud is a "pattern of conduct that extend[s] over a period of several years." *SEC v. Selden*, 632 F. Supp. 91, 97 (D. Mass. 2009). Egregious means "blatant, very noticeable especially for being incorrect or bad,"[2] "extremely bad in a way that is very noticeable,"[3] and "extremely or remarkably bad, flagrant."[4]

Measured against that standard, Mr. Panuwat's trade was far from egregious. In 2016, it was not blatantly obvious that trading in a company within the same industry would constitute securities fraud when the employee had no material nonpublic information ("MNPI") directly about the company in whose securities he traded. Moreover, "[c]ourts tend to relate egregiousness to the isolated versus recurrent nature of the misconduct[.]" *SEC v. Sabrdaran*, 252 F. Supp. 3d 866, 890

---

[2] *Egregious*, Merriam-Webster (Online ed. 2024).
[3] *Egregious*, Cambridge Dictionary (Online ed. 2024).
[4] *Egregious*, Black's Law Dictionary (11th ed. 2019).

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

(N.D. Cal. 2017) (finding no egregiousness in single instance of tipping). Here, the SEC has conceded that Mr. Panuwat's Incyte trade was an isolated occurrence. ECF 189 at 14. And the SEC has never shown that Medivation suffered any harm from Mr. Panuwat's trade, or that it even objected to the trade.

The SEC's claim that "insider trading is a flagrant, deliberate, and serious violation of the federal securities laws" is divorced from the facts specific to this case. *See* ECF 189 at 14-15 (citing *SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465, at *8 (N.D. Tex. Aug. 25, 2010)). Mr. Panuwat did not commit garden variety insider trading. Unlike *Gunn*, which involved a classic insider trading scheme, Mr. Panuwat was charged in a novel enforcement proceeding. The SEC's reliance on *Gunn* is therefore inapposite, and in any event, *Gunn* did not impose an officer/director bar of any length. *See* 2010 WL 3359465, at *8.

The SEC's reliance on *Chapman* to support its position that the conduct here was egregious highlights the unreasonableness of that position. In *Chapman*, the court imposed a permanent officer/director bar for securities violations stemming from an IPO that resulted in parallel convictions for 23 counts of mail and wire fraud, and a violation of investment advisor fraud arising out of the same conduct. *SEC v. Chapman*, 826 F. Supp. 2d 847, 851 (D. Md. 2011). The defendant *Chapman* was the chairman of the board, CEO and majority shareholder of several interrelated financial services companies, including one that operated as an investment manager for a trust funded in significant part by the Maryland State Retirement and Pension System. *Id.* at 850. Through the recommendation of Chapman's company, and upon the deceitful representation that there was no self-interest in the transaction, this trust was a major underwriter for another of Chapman's company's IPO. *Id.* at 850-51. When the IPO went south, and the company's value plummeted, Chapman attempted to salvage his 63% ownership interest in the company by soliciting additional funds from the trust at an inflated price and backdating this Hail Mary investment to appear as if it had been part of the IPO. *Id.* at 851. The court reasoned that the officer/director bar was warranted because Chapman's scheme "involved multiple transactions" and because of the "abuse of his clients' trust . . . to promote his well-being over that of his clients renders the offense egregious enough to merit" the bar. *Id.* at 858; *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846,

5

867 (S.D.N.Y. 1997) (lifetime officer bar warranted where defendant's "fraudulent behavior was not limited to a single, isolated incident," but instead amounted to "a three-year course of conduct, entailing repeated and diverse violations").

*Chapman* is not analogous because (1) Mr. Panuwat's Incyte trade was a solo transaction; (2) Medivation, the victim under this theory of securities laws violations, suffered no financial loss—none—from Mr. Panuwat's Incyte trade, nor did anyone from Medivation object to the trade; (3) Mr. Panuwat did not deliberately nor affirmatively lie to Medivation *at any time*; and (4) there is no comparable showing of deceitful financial self-preservation. Moreover, *Chapman*'s obvious and well-defined breach of fiduciary duty as an investment advisor to a trust holding important public assets is not comparable to the novel and murky questions of duty in this case, as evident by the fact that the parties are *still* debating the scope and source of the duty owed. ECF 192 at 11-14. For all these reasons, the SEC's claim that Mr. Panuwat's conduct was egregious is facially unreasonable. The lack of egregiousness here tilts heavily in Mr. Panuwat's favor.

### b. The defendant's repeat offender status

As the SEC recognizes, Mr. Panuwat is a first-time offender, which weighs heavily against a severe penalty. Indeed, many courts have recognized that "[a]n officer and director bar may be *inappropriate* where the offense is the defendant's first and only violation of securities law." *SEC v. Chan*, 465 F. Supp. 3d 18, 35–36 (D. Mass. 2020) (emphasis added); *see also, e.g.*, *SEC v. Bankosky*, No. 12 CIV. 1012 HB, 2012 WL 1849000, at *2 (S.D.N.Y. May 21, 2012) (recognizing this factor as "particularly relevant"); *Patel*, 61 F.3d at 141–42 (reversing district court's imposition of officer/director bar where other factors counseled in favor of bar but defendant was a first-time offender); *SEC v. Boey*, No. 07-CV-39-SM, 2013 WL 3805127, at *3 (D.N.H. July 22, 2013) ("A lifetime bar—as the SEC seeks here—is an extraordinary remedy, usually reserved for those defendants who engaged in prior securities violations[.]"); *SEC v. Dibella*, No. 3:04CV1342 (EBB), 2008 WL 6965807, at *11 (D. Conn. Mar. 13, 2008) (declining officer/director bar because the defendant "is not the type of 'repeat offender' for whom an officer/director bar is especially appropriate.").

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

1    Mr. Panuwat's first-time offender status is thus a factor that weighs heavily against

2    imposing a lifetime bar.

3                              **c.      Role or position**

4        The role/position factor warrants a severe penalty when the defendant "directs subordinates

5    to engage in unlawful conduct." Jayne W. Barnard, *Rule 10B-5 and the "Unfitness" Question*, 47

6    Ariz. L. Rev. 9, 48 (2005) (citing cases). Mr. Panuwat acted alone in this case, and he did not direct

7    or lead any subordinates as part of the charged conduct. This factor favors Mr. Panuwat.

8        The SEC's contrary arguments are not persuasive. Mr. Panuwat does not deny that he held

9    a senior position at Medivation. But that fact does not alone end the inquiry because the SEC has

10   not shown how Mr. Panuwat's position at Medivation is an aggravating factor here.

11       The SEC relies on *Sabradaran* and *Bankosky* to claim, generally, that occupying a position

12   of trust within a company is per se aggravating, but those cases do not stand for that proposition.

13   Rather *Sabradaran* and *Bankosky* support the notion that a defendant's role is an aggravating factor

14   where there is some additional fact about the defendant's specific job-related duty that renders a

15   violation of that duty *additionally* aggravating. For example, in *Sabradaran*, the court found that

16   the defendant's position as a drug safety officer required heightened candor and found it particularly

17   troubling that he violated this specific duty of candor when he failed to disclose to his company

18   that he had tipped information about a drug he was tasked with monitoring. 252 F. Supp. 3d at 891.

19   In *Bankosky*, it was not solely the defendant's role as a business developer that tilted in favor of the

20   bar as much as it was the fact that the company had a "Code of Conduct, which forbid[] employees

21   from trading based on material nonpublic information, including 'significant acquisitions,' [and]

22   'joint venture transactions,'" and, that the defendant, upon obtaining information that his company

23   intended to acquire another company and engage in a joint venture with another still, purchased

24   out-of-the-money call options in both those other companies.  2012 WL 1849000, at *1-2. In other

25   words, this was a clear act of classical insider trading in violation of a policy "aimed squarely" at

26   him. *Id.*

27       If *Sabradaran* and *Bankosky* are the benchmarks, the SEC has failed to show how Mr.

28   Panuwat's role as a business director made his Incyte trade additionally aggravating. In other words,

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

7

the SEC has failed to cite a specific job-duty relevant to him that made his Incyte particularly egregious. There was no evidence that Mr. Panuwat's role at Medivation required heightened candor above and beyond any other senior executive or that Mr. Panuwat was obligated to disclose his Incyte trade and failed to do so. *Bankosky* is also not analogous because unlike the clear company policy prohibiting classical insider trading of the exact type with which the defendant engaged, Medivation's policy did not unambiguously prohibit the trading in the securities of unaffiliated companies and so did not "aim squarely" at Mr. Panuwat or his Incyte trade. Indeed, Medivation executives stated under oath that they didn't read the policy to bar Mr. Panuwat's trade. ECF 192 at 25-26. Moreover, In *Bankosky*, factors other than the defendant's role/position were significantly aggravating and provided stronger justification for the bar. At bottom, the SEC cannot make a compelling showing that Mr. Panuwat's role was aggravating given the novel nature of its case against him and the unresolved legal questions of duty, ECF 192 at 11-14, which are both surely mitigating factors here.  Mr. Panuwat's role at Medivation is not an aggravating factor, and instead should be seen as neutral.

### d.    Degree of scienter

The scienter factor refers to the willfulness of the defendant in violating securities law. Here, the scienter factor favors Mr. Panuwat because at the time of his trade, it was not clearly established that a trader who lacked MNPI about the company in which he traded would be forbidden from trading in that company—so it cannot be the case that Mr. Panuwat willfully violated well-established securities laws.

The SEC's claim that Mr. Panuwat possessed a high degree of scienter because he "understood what insider trading was, having worked for multiple public companies as well as an investment bank" but nevertheless proceeded to trade in an adjacent biopharmaceutical company about which he had no direct MNPI, ECF at 189 at 16, ignores the critical issue: in 2016, when he traded, there was no indication that Mr. Panuwat's trade in Incyte was prohibited insider trading. His sophisticated background is actually mitigating because while Mr. Panuwat may have been aware that he could not trade in *Medivation*, he had no basis to believe that he could not trade in *Incyte*.

8

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

Similarly, the SEC must be judicially estopped from claiming that the jury made any finding that he possessed "an intent to defraud Medivation." *See* ECF 189 at 12.  "Judicial estoppel protects the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]" *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023). "[A] party is estopped from making an argument when 1) its current position is clearly inconsistent with its previous position; 2) the party has succeeded in persuading a court to accept that party's earlier position; and 3) the party, if not estopped, would derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.*

*First*, the SEC's current position that the jury found Mr. Panuwat intended to defraud Medivation is inconsistent with its pretrial position. *See* ECF 103 at 31:1-4 (arguing against using the language "intent to defraud" as an element of securities fraud and claiming the SEC could "establish scienter by showing that the defendant knew or recklessly disregarded that he or she had material, nonpublic information [and] . . . [t]here is no basis for requiring the SEC to prove an 'intent to defraud' on top of this."); 3/22/2024 Hearing Tr. at 13 (over Mr. Panuwat's request to modify element four to include the "intent to defraud" language, the SEC responded: "we certainly continue to oppose the sorts of modifications to element[] . . . 4."). *Second*, the SEC succeeded in persuading the Court that intent to defraud was not a required element of securities fraud. *See* ECF 155 at 17. *Third*, it would now be unfair for the SEC to succeed on a claim for maximum penalties having asserted that this type of punishment was consistent with the jury's finding of intent to defraud when the SEC fought so vigorously to keep that language out of the elements establishing liability.

The SEC also claims that Mr. Panuwat's dishonesty supports a scienter finding because he "did not tell anyone about his Incyte trades."[5] ECF 189 at 17. That argument misstates the evidence. Neither Mr. Panuwat nor Mr. Piscitelli have ever testified that Mr. Panuwat did not talk about his Incyte trade after the fact. Their testimony has always been that neither of them could recall whether they ever subsequently discussed the trade, which took place eight years ago.

---

[5] The SEC additionally claims that Mr. Panuwat's history of dishonesty supports scienter, which is the SEC's principal argument as to the "likelihood that misconduct will reoccur."  *See* ECF 189 at 17-19. For that reason, Mr. Panuwat will address the argument below.

9

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

For all of these reasons, and in fairness to Mr. Panuwat who vigorously fought for and lost the ability to adequately present a no-scienter defense, ECF 192 at 12-16, 25-30, the Court should find this factor neutral.

### e. Economic stake

As the SEC acknowledges, Mr. Panuwat realized $107,065.80 in trading profits.[6] While this figure is not insubstantial it is also, by no means, an outlier or significant compared with the millions of dollars at issue in many cases.[7] *SEC v. Shah*, No. 92 CIV. 1952 (RPP), 1993 WL 288285, at *7 (S.D.N.Y. July 28, 1993) (characterizing benefit of $121,340 as "relatively small"). The fact that Mr. Panuwat stood to gain much more had he truly intended to defraud Medivation is also mitigating. Mr. Panuwat did not sell all the options immediately after Medivation's acquisition was announced (which one would have expected him to do had he purchased Incyte call options based upon the anticipation of Medivation's merger announcement); rather, he sold less than half a couple days later. He continued to hold the majority of the options for another few weeks, and in doing so, lost six figures when he ultimately sold the remainder at a loss. This factor should not be decisive of a bar here.

### f. Likelihood of future misconduct

The parties agree that the likelihood of future misconduct is the key factor for imposition of an officer/director bar. *See Patel*, 61 F.3d at 141. But there is no evidence in the record that Mr.

---

[6] The SEC claims that Mr. Panuwat "*himself* viewed the trades as netting him roughly $120,000 in profits" (despite its assessment that $107,065.80 is the more accurate figure) misstates the record. *See* ECF 189 at 20 n.3 & 21 (misrepresenting the cross-examination to ignore Mr. Panuwat's statement that he would "trust the SEC's math" and his agreement with the SEC's question that the math it walked him through "sounds about right.").

[7] *See, e.g.*, *SEC v. Bechtolsheim*, 24-cv-01845 (N.D. Cal. Mar. 26, 2024), https://www.sec.gov/news/press-release/2024-40 (profits of $415,000); *SEC v. Rosenthal*, 426 F. App'x 1, 3 (2d Cir. 2011) (profits of $962,905.58); *SEC v. Svoboda*, 409 F. Supp. 2d 331, 344 (S.D.N.Y. 2006) (profits of $1.25 million); *SEC v. Kinnucan*, 9 F. Supp. 3d 370, 373 (S.D.N.Y. 2014) (profits and avoided losses approximately $1.6 million); *SEC v. Loudon*, 24-cv-00622 (S.D. Tex. Feb. 22, 2024), https://www.sec.gov/news/press-release/2024-24 (profits of $1.76 million); *SEC v. Cooperman*, 16-cv-5043 (E.D. Pa. Sept. 21, 2016), https://www.sec.gov/news/public-statement/statement-leon-cooperman-settling-insider-trading-charges (profits of $1.8 million per defendant); *SEC v. McClellan*, 10-cv-5412 (N.D. Cal. Nov. 30, 2010), https://www.sec.gov/litigation/litreleases/ lr-22139 (collective profits of $10 million); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 125 F.R.D. 51, 52 (S.D.N.Y.1989) (profits of $11.5 million); *SEC v. Wang*, 944 F.2d 80, 81 (2d Cir.1991) (profits of $19 million); *SEC v. Wyly*, 56 F. Supp. 3d 394, 432 (S.D.N.Y. 2014) (ordering disgorgement of $16,833,798 which the court calculated to be 25% of the total profits).

---

10

Panuwat is likely to reoffend, and indeed, the available evidence points in the other direction: This case involves a first-time offender found liable for a single trade, and it is the first-in-the-country enforcement action of its kind. Mr. Panuwat testified under oath that, in 2016, it "never occurred to [him]" that his Incyte purchase would "violat[e] any of the laws of the United States as it relates to securities trading[.]" 4/3/2024 Trial Tr. at 923, 1008, 1032-33. He testified that he did not believe he was breaching any duty to Medivation by trading in Incyte. *Id.* at 1032. He expressed respect for the securities markets and how smart investing can transform lives. *See id.* at 932-33. He also expressed respect for our nation's securities laws by stating that if he had been aware of any possibility that his trades would have violated federal securities laws, he never would have traded in Incyte. *Id.* at 1033. That record supports the notion that Mr. Panuwat did not intend to commit a securities violation, and with notice now of the SEC's expanded interpretation of § 10(b) fraud, he never would have traded in Incyte and will not commit any securities violation in the future.

The SEC supports its contrary argument based primarily on its characterization of Mr. Panuwat as a liar. The SEC argues that Mr. Panuwat lied about his reasons for the Incyte trade to investigators, his involvement in the bid process, his knowledge of the bid details, and his whereabouts at the time of the trade. ECF 189 at 17-18. The problem with this argument is that there is no objective basis for determining the so-called falsity of these statements.

The SEC first claims that Mr. Panuwat gave false and misleading answers about his Incyte trade on four occasions. ECF 189 at 11-14, 17. The SEC cannot, however, point to one actual inconsistency in his testimony.  Instead, it faults Mr. Panuwat for providing additional detail over time. Mr. Panuwat's initial inability to recall much about the Incyte trade when first questioned makes sense given that this interview occurred in May of 2020, four years after the trade, and he was given no indication which of the 150 to 200 trades over five years of trading activity he would be asked about. 4/3/2024 Trial Tr. at 972-74. The fact that he testified in even greater detail at trial should come as no surprise either. Understanding that the jury would be judging him for the reasonableness of this trade, Mr. Panuwat gave his most fulsome explanation, which included, for the first time, after ability to review information about the trade in much greater detail, a discussion of the strategy behind it. The SEC's claim of falsity is nothing more than its retaliatory spin on the

11

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

evidence. That is an inadequate basis to impose the "drastic remedy," of an injunction. *Aaron v. SEC*, 446 U.S. 680, 703 (1980) (Burger, C.J., concurring).

The SEC also claimed that Mr. Panuwat falsely presented his involvement in Medivation's sales process as diminishing toward the end of August. ECF 189 at 12. The SEC asserts that it proved this was untrue by presenting emails demonstrating that Mr. Panuwat was "deeply involved" in the sales process during that same time period. *Id.* This argument amounts to nothing more than quibbling with Mr. Panuwat's subjective characterization. Indeed, it can be true that Mr. Panuwat's involvement in the sale at the end of August was both diminishing and still deep. Mr. Panuwat's assessment of his work years later is informed by the fact that responsibilities in his personal life were demanding his attention. *See* ECF 98 at 19 (acknowledging that the same week of Mr. Panuwat's Incyte trade, he was spending considerable time with his son who was then hospitalized, which coincided with a major event in his daughter's life, the result of which was he had "a lot of stuff going on" that week). As for his testimony in 2020 that in 2016 he "did not believe" he was aware of the bid prices, ECF 189 at 18, the fact that he was wrong in his recollection when asked four years-after-the-fact does not make him a liar. Moreover, the SEC's argument that Mr. Panuwat's inability to recall whether he was in the office at the time of the trade is a lie to diminish his culpability is a knowingly false claim that is as inappropriate now as it was at trial. *See* ECF 192 at 23.

These allegations of dishonesty are a far cry from the objective and recurrent deceitfulness at issue in *Sabradaran*. Dr. Sabradaran intentionally deleted Facebook messages and wiped a hard drive after the SEC subpoenaed this evidence. 252 F. Supp. 3d at 891. Despite accepting the defendant's claim that he deleted the hard drive to conceal embarrassing personal information, the court was troubled by what it perceived as the defendant's "instinctual reaction" to hide when "things get uncomfortable." *Id.* The court saw this conduct echoed at trial when, on cross examination, the SEC confronted him with an email he had sent to his boss lying about his whereabouts while on vacation with a romantic partner. *Id.* at 891-92. Instead of admitting the email contained an "arguably immaterial" misrepresentation, the court noted that the defendant dug in his heels to defend the email's veracity, only to admit later that his subsequent explanations of the

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

12

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

email were also untrue. *Id.* The court saw this conduct as a pattern: when confronted with his deception, "Dr. Sabradaran's reaction is to lie further—not only to his boss or the SEC, but to the jury while under oath." *Id.* The court believed this pattern of objectively dishonest behavior made him unfit to be an officer or director. *Id.*

Mr. Panuwat bears no resemblance to Dr. Sabradaran. When the SEC issued a subpoena seeking his computer, cell phone, emails, bank account information, brokerage statements, employment history and more, Mr. Panuwat fully cooperated, turning everything over. 4/3/2024 Trial Tr. at 973. He answered all of the SEC's questions to the best of his recollection in two investigative interviews and a deposition. And unlike in *Sabradaran* where the proof of the defendant's false testimony under oath was established by his own recanting, the SEC's claims of dishonesty here amount to exploiting Mr. Panuwat's imperfect memory and simply calling his subjective characterization of facts false. Mr. Panuwat's insistence that he did not commit insider trading is not grounds to call him a liar either—it is his right to a defense. The SEC cannot point to any similar reflexive tendency in Mr. Panuwat to lie when things get difficult. *Sabradaran* is inapt here.[8]

---

[8] When other courts have found dishonesty persuasive of imposing a bar, it is similarly based on objective findings of deceit. In *Jasper*, the court was troubled by the defendant's accounting lies, which included falsifying financial records, backdating, and submitting objectively false forms to the SEC. *Jasper*, 883 F. Supp. 2d at 928. Similarly, in *Retail Pro, Inc.*, the court found dishonesty to be compelling of an injunction where a CFO told auditors he had no knowledge of any fraud at the company, refused to read a memo alleging fraud, fired the employee that wrote the memo, and then disseminated public information inflating the company's quarterly earnings. *SEC v. Retail Pro, Inc.*, No. 08CV1620-WQH-RBB, 2011 WL 13186014, at *3, *5 (S.D. Cal. June 23, 2011). In *Hilsenrath*, the court actually found the defendant's dishonesty neither aggravating nor mitigating but was troubled that the defendant, a CEO, misled the public about the company's financial state in omitting from public disclosures regular payments his company had made to another entity with which he held a beneficial interest, which was a self-interested transaction he failed to disclose to his company's board of directors. *SEC v. Hilsenrath*, No. C 03-03252 WHA, 2009 WL 1855283, at *3 (N.D. Cal. June 29, 2009). In *Zubkis*, the court found the defendant's lies to investors about the company's prospects compelling of the defendant's unfitness when the defendant had wooed potential investors with representations that the company's projected revenues were $60 million (when actual revenue was less than a million and there was no basis for the higher figure), that United Airlines would soon be offering the company's product on all its flights (when there was no such contract in the works), that a merger would soon be announced between the company and Boston Chicken (when no merger discussions had ever been held), and that the company would be listed on NASDAQ by the end of 1996 (when the company never applied to be listed on NASDAQ or any other stock exchange). *SEC v. Zubkis*, No. 97 CIV 8086 JGK, 2000 WL 218393, at *5, *10

---

13

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

1    The SEC also claims that Mr. Panuwat's failure to accept responsibility for his misconduct

2    supports this factor. ECF 189 at 19. This claim is wrong. *See Ingoldsby*, WL 120731, at *3. That

3    Mr. Panuwat "has not publicly acknowledged the wrongfulness of his conduct, . . . is not evidence

4    of a propensity within [him] to commit future violations." *Id.* Many courts recognize that "[a]bsent

5    a showing of bad faith, the defendant should not be prejudiced for presenting a vigorous defense

6    and requiring the SEC to meet its proper evidentiary burden both at trial and at the injunctive relief

7    stage of the judicial proceedings." *Id.*; *First City Fin. Corp.*, 890 F.2d at 1229 ("The securities laws

8    do not require defendants to behave like Uriah Heep in order to avoid injunctions. They are not to

9    be punished because they vigorously contest the government's accusations. We think lack of

10   remorse is relevant only where defendants have previously violated court orders, or otherwise

11   indicate that they did not feel bound by the law."); *SEC v. Snyder*, No. CIVAH-03-04658, 2006

12   WL 6508273, at *5 (S.D. Tex. Aug. 22, 2006) (criticizing the SEC for arguing that the defendant's

13   failure to admit the charges, which would "eliminate all of [the defendant's] appellate rights,"

14   supports an injunction where the defendant otherwise expressed a sincere intent to abide by

15   securities laws in the future). Mr. Panuwat asserted his lawful rights to contest the application of

16   the SEC's novel theory and should not be punished now for doing so.

17   To find within Mr. Panuwat the propensity to "imminently" commit another trading

18   violation, the Court must do more than tacitly accept the SEC's characterization that Mr. Panuwat

19   is a liar based solely on a verdict finding him liable or that he is a bad person because he went to

20   trial.  If this were enough, then this factor would be rendered moot, as it would weigh against every

21   defendant who failed to settle his case. Because there is no objective basis to believe Mr. Panuwat

22   is likely to reoffend, this factor should be considered neutral.

23   (S.D.N.Y. Feb. 23, 2000). Finally, in *Softpoint*, the court was troubled by the CEO's deception in

24   falsifying accounting records to cover up fictious sales of unregistered stock, falsifying tax returns
     and SEC filings, admitting much of this conduct, and then recanting that testimony. *SEC v.*

25   *Softpoint, Inc.*, 958 F. Supp. 846, 852-53, 867 (S.D.N.Y. 1997). All of these cases involved much
     more than faulty memory and the SEC's attempt to impeach subjective characterizations.

26

27

28

DEFENDANT'S OPPOSITION TO THE SEC'S REMEDIES MOTION
Case No. 3:21-cv-6322-WHO

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

### g.   Lack of stealth

*Patel* made clear that its six factors were not the "only factors that may be taken into account." 61 F.3d at 141. Here, Mr. Panuwat's lack of stealth and concealment also weighs in his favor.

That neither Mr. Panuwat nor Mr. Piscitelli recall whether they ever discussed Mr. Panuwat's trade in Incyte does not mean that Mr. Panuwat concealed it. As in *Sabradaran*, many courts consider evidence of the defendant's attempt to conceal the illegal activities or lack thereof to be persuasive of the appropriateness of a penalty. *Compare SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003) (finding mitigating the fact that the defendant was an "outsider" to the company with which he traded "who made no efforts to conceal his isolated transaction, which involved trading in the same stock during a short period of time"), *and Gunn*, 2010 WL 3359465, at *10 (finding mitigating that the defendant "used his own accounts to buy and sell the securities at issue, he did not trade in anyone else's name, and he did not attempt to cover up his trading after the fact."), *with SEC v. Suman*, 684 F. Supp. 2d 378, 392 (S.D.N.Y. 2010) (injunction appropriate where the defendant "misled Canadian investigators and then deleted incriminating evidence from his computer.").

Mr. Panuwat did not destroy evidence. He fully cooperated with the SEC during the investigation. He traded in his own brokerage account.  He took no steps to conceal his trade after the fact nor hide his trading profits in an unaffiliated account. Mr. Panuwat's forthrightness in the face of criticism evidences his fitness to serve as a public officer.

*** 

Of the *Patel* and other factors considered above, three strongly favor Mr. Panuwat (the lack of egregiousness, the fact that this was an isolated incident, and that there was no stealth or concealment) and three factors are inapplicable or neutral (his role or position, scienter, and the likelihood of future misconduct). The only factor that arguably supports the SEC is the fact that Mr. Panuwat made money on the trade, which, alone, does not support an officer/director bar, let alone one of permanent duration, particularly when the Court can deal with this factor by imposing a reasonable civil penalty as described below. It is the SEC's burden to show that the "drastic

15

1   remedy," *Aaron* at 446 U.S. at 703, of an officer/director bar is necessary because future violations

2   "are a relatively imminent threat," *Ingoldsby*, 1990 WL 120731, at *2. The SEC has wholly failed

3   this showing.

### 2.     A permanent officer/director bar is overbroad.

5          If the Court believes some injunction is necessary, an officer/director bar is not warranted

6   because there are other forms of injunction that would more directly target the conduct that

7   occurred, and a permanent bar is simply too long. The Court has broad discretion to fashion an

8   injunction that fits the "needs of a specific case, and the conduct for which a defendant has been

9   held liable." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226

10  (C.D. Cal. 2007); Any injunction must be "narrowly tailored to fit [the] specific legal violation[]"

11  that occurred. *Waldman Pub. Corp.*, 43 F.3d at 785.

12         Courts impose officer/director bars when a defendant's conduct demonstrates unfitness to

13  serve as a fiduciary of the shareholders and the investing public. *See First Pac. Bancorp*, 142 F.3d

14  at 1193; 15 U.S.C. § 78u(d)(2). But here, under the SEC's theory, Medivation's shareholders and

15  the investing public were not the victims in Mr. Panuwat's case; the only fiduciary duty he was

16  found to have violated was one he owed to the company not to misappropriate its confidential

17  information. ECF 192 at 22. To broadly bar him from service as an officer/director does not bear a

18  "common sense" relationship to the "conduct for which a defendant has been found liable," *Metro-*

19  *Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1226, and an officer/director bar is overbroad

20  because it would prohibit Mr. Panuwat from more conduct than necessary to preclude the

21  possibility of future breaches of company duty. There are other injunction possibilities that are

22  more narrowly tailored to prevent a breach of fiduciary duty to his employers, although none should

23  be imposed. For example, the Court could fashion an injunction targeted more specifically at

24  disclosure or trading conduct. Such an injunction would be designed to prevent any repeat of the

25  specific conduct that occurred without encompassing more conduct than necessary.

26         Second, a permanent officer/director bar would be overbroad in length. "Before imposing a

27  permanent bar, the court should consider whether a conditional bar, limited in time, might be

28  sufficient, especially where there is no prior history of unfitness. Thus, while a limited officer and

16

director bar has been imposed upon a finding that a defendant acted recklessly, a permanent bar requires greater justification." *SEC v. All. Transcription Servs., Inc.*, No. CV08-1464-PHX-NVW, 2009 WL 5128565, at *9 (D. Ariz. Dec. 18, 2009).

Courts only impose a permanent bar when the balance of factors makes it clear that no lesser sanction can protect the public from the "relatively imminent threat" of repeated misconduct, *Ingoldsby*, 1990 WL 120731, at *2, and there is no evidence that Mr. Panuwat will engage in *any* misconduct, let alone imminent misconduct. If the Court believes an officer/director bar is warranted, a two-year bar is much more appropriate where the majority of the factors are either neutral or weigh against any bar. Mr. Panuwat's case is much more similar to, and in fact, less warranting of a bar than many where courts have imposed only a two-year bar as demonstrated in the table below.

| Case With 2 Yr. Bar | Factors |
| --- | --- |
| *SEC v. Johnston*, 368 F. Supp. 3d 247, 253 (D. Mass. 2019). | Defendant's misconduct was not egregious as it lasted only "a few months"; defendant was a first-time offender with "30-plus years of compliance with securities laws"; he showed some scienter but was "face[d] [with] factual or legal ambiguities" relative to his conduct that mitigated this element; he had a minimal "economic stake in the violations"; although entitled to his "vigorous defense at trial," the court felt there was some possibility of reoccurrence in that he continued to insist on his lack of culpability but was also sincere in his remorse. |
| *SEC v. Selden*, 632 F. Supp. 2d 91, 97 (D. Mass. 2009). | Defendant's misconduct was egregious in that it extended for a period of years; he held a significant role in his company as CEO; he possessed a "significant degree of scienter"; his economic stake was significant in that he avoided losses of 1.5 million; his continued employment as a CEO in biotech and continued reliance of an advice-of-counsel defense created "a lack of adequate assurance against future misconduct"; but defendant cooperated with the SEC during the investigation and he was a first-time offender with over a decade of compliance with securities laws. |
| *SEC v. Carr*, No. 3:18-CV-1135 (SRU), 2020 WL 13303131, at *4 (D. Conn. Jan. 10, 2020). | Defendant's misconduct was egregious; his position as CEO was significant; he possessed scienter; his economic stake was not insignificant given that he enabled his romantic partner to obtain $250,000 in profits which benefited his new business venture; he demonstrated untruthfulness during the SEC's investigation; his expressions of remorse "were directly contradicted by his private emails discussing two pending SEC cases"; but he was not a repeat offender. |
| *SEC v. Jasper*, 883 F. | Defendant's misconduct was egregious as it was ongoing; he had a high |

17

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

| Supp. 2d 915, 928 (N.D. Cal. 2010). | degree of scienter; there was a significant likelihood that the misconduct would reoccur; his role as CFO was significant; but he had a low economic stake in the violation and there were no other securities violations in the defendant's past. |
|---|---|

The Court should not impose a permanent bar where there are other, more narrowly tailored means of preventing any future misconduct, and a permanent bar would be grossly disproportionate to the conduct that occurred and out of line with SEC precedent.

## B.  The Court should impose a civil monetary penalty at most equal to the amount of Mr. Panuwat's trading gain.

To determine the appropriate civil penalty, courts apply the *Murphy* factors. *See supra* at 2. The maximum penalty the court may impose is three times the profit gained or loss avoided. 15 U.S.C. § 78u-1. Applying the *Murphy* factors here, and examining like cases, the Court should impose a penalty of $107,065.80, a figure equal to Mr. Panuwat's trading profit.

The majority of the *Murphy* favors do not support a high penalty multiplier. Mr. Panuwat's Incyte trade was without scienter. *See supra* at 8-10.  The trade was an isolated occurrence and the SEC has not alleged that it was part of any broader shadow trading scheme. *See supra* at 6-7. The Court cannot punish Mr. Panuwat for failing to call the trade wrong when doing so would eliminate his appellate rights. *See supra* at 13-14. Neither the fourth factor, "the likelihood, because of defendant's professional occupation, that future violations might occur," nor the fifth factor, "the sincerity of his assurances against future violations," counsel in favor of a penalty. There is no indication in the record that Mr. Panuwat is likely to reoffend; and though his current position at ORIC exposes him to confidential information, the fact that ORIC continues to place him in that position demonstrates their faith in his ability to adhere to their policies and governing laws. Moreover, the fact that he now has notice of the SEC's extension of securities fraud means there is little reason to worry he would abuse any position of privilege.  Mr. Panuwat also did not conceal his trade. *See supra* at 14-15. Finally, though Mr. Panuwat is "in a better position than most. . . . his ability to pay alone cannot tip the balance in favor of the imposition of a civil penalty where other factors are lacking." *SEC v. Mellert*, No. C03-0619 MHP, 2006 WL 927743, at *1 (N.D. Cal. Mar. 29, 2006).

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

18

At most, an analysis of these factors supports only a modest fine.

As illustrated below, the SEC's request for a triple penalty would subject Mr. Panuwat to disparately harsh treatment, a result that should be avoided.

| Case | Profit | Penalty |
|---|---|---|
| *SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010). | $108,587.87 | $50,000 (0.46x) |
| *SEC v. Daubenspeck*, 469 F. Supp. 3d 859, 860 (N.D. Ill. 2020). | $111,472 | $83,604 (0.75x) |
| *SEC v. Pardue*, 367 F. Supp. 2d 773, 777–78 (E.D. Pa. 2005). | $140,000 | $25,000 (0.18x) |
| *SEC v. Bankosky*, No. 12 CIV. 1012 HB, 2012 WL 1849000 (S.D.N.Y. May 21, 2012). | $63,000 | $63,000 (1.0x) |
| *SEC v. Yun*, 148 F. Supp. 2d 1287 (M.D. Fla. 2001). | $269,000 | $100,000 (0.37x) |
| *SEC v. Svoboda*, 409 F. Supp. 2d 331, 344 (S.D.N.Y. 2006). | $1,250,000 | $150,000/$250,000 per defendant (0.12x / 0.2x) |
| *SEC v. Berrettini*, 218 F. Supp. 3d 754 (N.D. Ill. 2016). | $240,622 | $120,311.00 (0.5x) |
| *SEC v. Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at *6 (N.D. Cal. July 14, 2011). | $374,912 | $100,000 (0.27x) |
| *SEC v. Mellert*, No. C03-0619 MHP, 2006 WL 927743 (N.D. Cal. Mar. 29, 2006). | $59,000 | $0 |
| *SEC v. Soroosh*, 166 F.3d 343 (9th Cir. 1998). | $505,819 | $160,000 (0.32x) |

Make no mistake; the SEC's belief that a three-time multiplier is necessary is a trial penalty. Any argument that a higher penalty is warranted because it did not seek disgorgement is also no reason for a three times multiplier. "[D]isgorgement is usually considered rather routine; if a person is found to have violated the securities laws, and profited from the ensuing transaction, courts simply order the disgorgement of those profits." *SEC v. Yun*, 148 F. Supp. 2d 1287, 1290 (M.D. Fla. 2001). The SEC's failure to seek disgorgement in the Complaint was not based on any assessment that disgorgement was not appropriate; it was a mistake. A court would abuse its discretion to punish Mr. Panuwat by increasing a civil penalty where the justification for doing so was to correct the SEC's drafting error. Nevertheless, the fact that if no civil penalty were imposed, Mr. Panuwat would be allowed to retain the trading profit is a fact the Court may consider in setting an appropriate penalty. *See SEC v. Loomis*, 17 F. Supp. 3d 1026, 1032 (E.D. Cal. 2014). A civil penalty of $107,065.80 is therefore appropriate because it serves the deterrent purpose of penalty

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

19

payments without punishing Mr. Panuwat grossly disproportional to other cases that involved similarly low culpability.

### C.     No injunction against future securities violations is necessary.

On balancing the *Murphy* factors, discussed in detail above, no blanket injunction is warranted and an injunction of this nature would be overbroad. However, given that Mr. Panuwat has no intention to commit any securities violations in the future, Mr. Panuwat would accept this injunction in lieu of any officer/director bar the Court might be inclined to enter.

## IV.   Conclusion

Mr. Panuwat respectfully requests the Court order no officer/director bar, decline to enjoin Mr. Panuwat, and impose a civil remedy no greater than $107,065.80.

Dated:  June 18, 2024                    SPERTUS, LANDES & JOSEPHS, LLP


                                         By:  /s/ Anthony Pacheco
                                              Anthony Pacheco

                                              Attorney for Defendant
                                              Matthew Panuwat

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

DEFENDANT'S OPPOSITION TO THE SEC'S REMEDIES MOTION
Case No. 3:21-cv-6322-WHO