**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Jack P. DiCanio (SBN 138782) Jack.DiCanio@skadden.com
Caroline Van Ness (SBN 281675) Caroline.VanNess@skadden.com
Joshua S. Brown (SBN 344711) Joshua.Brown@skadden.com
Andrew Woo (SBN 341604) Andrew.Woo@skadden.com
525 University Avenue, Suite 1400
Palo Alto, California 94301

**SPERTUS, LANDES & JOSEPHS, LLP**
James W. Spertus (SBN 159825) jspertus@spertuslaw.com
Anthony Pacheco (SBN 128277) apacheco@spertuslaw.com
Kirsi Luther (SBN 347279) kluther@spertuslaw.com
617 West 7th Street, Suite 200
Los Angeles, California 90017

Attorneys for Defendant
Matthew Panuwat

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Securities and Exchange Commission,<br><br>  Plaintiff,<br><br>  v.<br><br>Matthew Panuwat,<br><br>  Defendant. | Case No. 3:21-cv-6322-WHO<br><br>**DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Filed:     July 3, 2024<br>Hearing:   August 7, 2024<br>Time:      2:00 p.m.<br>Judge:     Hon. William H. Orrick |

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ............................................................................................................. 1

II. THE SEC PRESENTED INSUFFICIENT EVIDENCE OF DUTY. ...................... 1

    A. The jury could not have found a legally sound fiduciary duty under the entrustment theory. ............................................................................... 3

    B. The jury could not have found a duty not to trade in Incyte under the policies. ...................................................................................................... 6

    C. The jury could not have found that Medivation actually guarded its confidential information against a trade in Incyte. ....................................... 8

III. THE SEC PRESENTED INSUFFICIENT EVIDENCE OF BREACH. ................. 9

IV. THE SEC PRESENTED INSUFFICIENT EVIDENCE OF CAUSATION. ........ 10

V. THE SEC PRESENTED INSUFFICIENT EVIDENCE OF SCIENTER. ............ 12

VI. CONCLUSION ............................................................................................................... 13

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkins v. Corr. Corp. of Am.*,
   No. CV-12-1615-PHX-SMM, 2015 WL 631161 (D. Ariz. Feb. 13, 2015) ............................ 13

*Alliantgroup, L.P. v. Feingold*,
   803 F. Supp. 2d 610 (S.D. Tex. 2011) ........................................................................... 4, 5

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
   70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007) ......................................................................... 4

*Accord Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*,
   503 S.E.2d 278 (Ga. 1998) ................................................................................................. 4

*Bahmann v. N.A.*,
   2023 WL 5573820 (M.D. Fla. Aug. 29, 2023) ................................................................... 6

*Carpenter v. United States*,
   484 U.S. 19 (1987) .............................................................................................................. 8

*E.E.O.C. v. Go Daddy Software, Inc.*,
   581 F.3d 951 (9th Cir. 2009) ........................................................................................... 2, 3

*Irwin Katz & Assoc., Inc. v. Concepts in Health, Inc.*,
   2017 WL 593502 (D.N.J. Feb. 14, 2017) ......................................................................... 13

*Lakeside-Scott v. Multnomah Cnty.*,
   556 F.3d 797 (9th Cir. 2009) ....................................................................................... 10, 11

*McConnell v. Hunt Sports Ent.*,
   725 N.E.2d 1193 (Ohio Ct. App. 1999) ............................................................................. 5

*Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*,
   235 S.W.3d 695 (Tex. 2007) ............................................................................................... 4

*NCMIC Fin. Corp. v. Artino*,
   638 F. Supp. 2d 1042 (S.D. Iowa 2009) ............................................................................ 4

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................................................. 11

*Perry v. Perry Farms, Inc.*,
   638 F. Supp. 2d 840 (N.D. Ohio 2009) .............................................................................. 5

*SEC v. Talbot*,
   530 F.3d 1085 (9th Cir. 2008) ............................................................................................ 8

*Swartz v. Oracle Corp.*,
    787 F. Supp. 2d 686 (N.D. Ohio 2011) ................................................................................. 3

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
    2012 WL 4483158 (N.D. Cal. Sept. 27, 2012) ...................................................................... 3

*Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*,
    2023 WL 11197097 (C.D. Cal. Mar. 16, 2023) ................................................................... 13

*Trendsettah USA, Inc. v. Swisher Int'l Inc.*,
    2016 WL 11655117 (C.D. Cal. Aug. 17, 2016), *rev'd in part on other grounds*,
    761 F. App'x 714 (9th Cir. 2019) ...................................................................................... 2, 3

*United States v. Chestman*,
    947 F.2d 551 (2d Cir. 1991) (en banc) .............................................................................. 4, 6

*United States v. Mahaffy*,
    693 F.3d 113 (2d Cir. 2012) .................................................................................................. 8

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ............................................................................................ 11

*W. All. Corp. v. W. Reliance Corp.*,
    643 P.2d 1382 (Or. Ct. App. 1982) ................................................................................... 4, 6

*W. Blue Print Co., LLC v. Roberts*,
    367 S.W.3d 7 (Mo. 2012) ...................................................................................................... 4

*Williams v. Deutsche Bank Sec., Inc.*,
    No. 04 CIV. 7588 (GEL), 2005 WL 1414435 (S.D.N.Y. June 13, 2005) .............................. 4

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
    664 F. Supp. 3d 1142 (S.D. Cal. 2023) ............................................................................... 12

**Other Authorities**

Federal Rule of Civil Procedure 50 .......................................................................................... 2, 3

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

I.     **Introduction**

The Court should grant judgment as a matter of law for Mr. Panuwat. The SEC introduced insufficient evidence of the elements of misappropriation, and the SEC's response does not show otherwise.

*First*, the SEC produced insufficient evidence of duty and no evidence from Medivation itself that the scope of any specific duty owed by Mr. Panuwat prohibited employees from trading in the securities of a company with which Medivation had no business relationship. Mr. Panuwat's subjective understanding of duty is not sufficient evidence; were that the case, the independent elements of duty and scienter would collapse, making scienter superfluous.

*Second*, the SEC similarly produced insufficient evidence of breach, because no evidence established that Medivation prohibited Mr. Panuwat's trade in Incyte. As for materiality, the SEC misrepresents the nature of Dr. Becker's testimony to support its theory that a reasonable investor would have needed the information Mr. Panuwat had to profit from the Incyte trade. The SEC's need to correct the record makes clear that any nonpublic information Mr. Panuwat possessed was not material as a matter of law.

*Third*, the SEC similarly produced inadequate evidence of causation. The SEC offers only legally inadequate inferences based on timing alone to support the element. The SEC's opposition fails to meaningfully distinguish this fact or come forward with any facts that set forth a different valid theory of causation.

*Finally*, recognizing that element 4 was an incorrect articulation of the law on scienter, the SEC now pivots a hundred-and-eighty degrees from the case it prosecuted at trial and the evidence it claimed demonstrated scienter. It would therefore be unreasonable to conclude that the jury made an appropriate finding on scienter based on a wholly separate set of facts on which the SEC now relies to backfill the gap in evidence.

II.    **The SEC presented insufficient evidence of duty.**

There was insufficient evidence for the jury to conclude that Mr. Panuwat owed Medivation a fiduciary duty not to trade in a company with which Medivation had no business relationship. The SEC needed to prove that Mr. Panuwat had a specific duty not to trade based on Medivation's

1

nonpublic information that encompassed a trade in Incyte. *See* New Trial Mot. at 4-5; Opening Br. at 7.

The SEC did not meet that burden. Indeed, at trial, no one from Medivation offered testimony about Mr. Panuwat's purported duty. And Mr. Panuwat's subjective beliefs cannot fill the gap, because the question of duty is objective, and there was no evidence from which the jury could have concluded what Medivation would have prohibited. The SEC's counterarguments fail.

First, the SEC disputes that the jury had to find a specific duty that encompassed Mr. Panuwat's trade. *See* Opp. at 14. That's wrong. It's not enough for the SEC to simply show a general fiduciary duty; the SEC needed to show the existence of a specific duty not to trade that was relevant to the claimed breach. *See* New Trial Mot. at 4-5.

Then, the SEC argues Mr. Panuwat waived his argument that there was insufficient evidence under the Confidentiality Agreement or the entrustment theory. That's incorrect. A court should reject the nonmoving party's claim of waiver in response to a renewed motion under Federal Rule of Civil Procedure 50(b) unless there is no hint, however subtle, that the argument was raised in the first Rule 50(a) motion. To avoid a harsh result, courts liberally construe Rule 50(a) motions. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). There is no waiver if a party makes an argument, even one that is ambiguous or inartful, and a party preserves all arguments that are a "logical extension," *id*. at 961-62, or a "sufficient approximation," of the arguments raised in the Rule 50(a) motion, *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, 2016 WL 11655117, at *4 (C.D. Cal. Aug. 17, 2016), *rev'd in part on other grounds*, 761 F. App'x 714 (9th Cir. 2019).

Mr. Panuwat argued in his Rule 50(a) motion that the jury needed to find that he owed a specific trading duty to Medivation that would have prohibited a trade in Incyte, that the mere entrustment of confidential information to Mr. Panuwat was not sufficient, and that the remaining evidence in the record (including the policies) was insufficient.[1] Those arguments presented the

---

[1] Specifically, Mr. Panuwat argued that: (1) "No evidence in the form of Medivation's documents or testimony from its executives established that Mr. Panuwat did anything wrong from Medivation's perspective," Mot. for JMOL at 8; (2) "the SEC failed to introduce evidence from which a fact finder could reasonably conclude that Medivation prohibited its employees from

1  claim as to the Confidentiality Agreement and entrustment theories that Mr. Panuwat then renewed
2  in his Rule 50(b) motion. *See Go Daddy Software, Inc.*, 581 F.3d at 961; *Trendsettah USA, Inc.*,
3  2016 WL 11655117, at *4. The Court's obligation to generously construe arguments made in a
4  Rule 50(a) motion thus precludes any finding of waiver or forfeiture. *See Synthes USA, LLC v.*
5  *Spinal Kinetics, Inc.*, 2012 WL 4483158, at *7 (N.D. Cal. Sept. 27, 2012) (finding no waiver in
6  general Rule 50(a) argument that claimed plaintiff had submitted insufficient evidence of "four
7  challenged terms," even though the motion did not specifically name or otherwise characterize each
8  theory on which the plaintiff challenged the validity of a patent for lack of written description); *Go*
9  *Daddy Software, Inc.*, 581 F.3d at 962 (finding the specific argument that there was no evidence
10 the company learned plaintiff had made any report preserved the more general argument that the
11 plaintiff failed to introduce sufficient evidence that the plaintiff had engaged in protected activity
12 because the general argument was the "logical extension" of the issue raised).

    **A.   The jury could not have found a legally sound fiduciary duty under the entrustment theory.**

15 Even if the entrustment theory were a valid theory of duty (and it's not, *see* New Trial Mot.
16 at 5), there was insufficient evidence for the jury to have found duty under that theory regardless.
17 It was not enough for the SEC to claim that Mr. Panuwat's status as an employee, or his receipt of
18 confidential information, made him a fiduciary of Medivation. Nor would any general duty based
19 on either theory establish the scope or existence of any duties around trading.
20 This is because "[n]ot all employees are fiduciaries." *Swartz v. Oracle Corp.*, 787 F. Supp.
21 2d 686, 693 (N.D. Ohio 2011) (describing the factors that could give rise to finding a fiduciary

---

trading in biopharmaceutical companies with which it shared no business relationship;" *id.* at 20; (3) there was insufficient evidence to "conclude that Mr. Panuwat's [d]uty to Medivation [r]eached his Incyte [t]rades;" *id.* at 20; (4) that the jury needed to prove that Mr. Panuwat owed Medivation a duty that included a duty not to trade in Incyte that arises under "some fiduciary, contractual, or similar obligation," *id.* at 2 n.2 & Mot. for Interloc. Appeal (ECF 134 at 11; (5) it was "not enough for the jury to conclude that Mr. Panuwat violated a duty simply because Medivation entrusted him with its confidential information," *id.*; and (6) the jury needed to consider "all evidence" to determine whether Medivation prohibited a trade in Incyte "including the language of *policies* it may have issued;" Mot. for JMOL at 2 n.2 & Prop'd Joint Jury Instr. (ECF 103) at 56.

relationship within the employment context);[2] *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1083 (S.D. Iowa 2009) (recognizing that even in the context of the employment relationship, the "circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of the individual case."). Similarly, "a fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information." *United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991) (en banc).[3] The SEC did not produce evidence from which the jury could conclude that Mr. Panuwat's employment, in and of itself, made him a fiduciary of Medivation; no reasonable juror could have found the appropriate duty on grounds which the SEC never presented.

Similarly problematic, there was insufficient evidence of the scope of any fiduciary duty. *W. All. Corp. v. W. Reliance Corp.*, 643 P.2d 1382, 1387 (Or. Ct. App. 1982) ("The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made[.]" (quoting Restatement (Second) of Agency § 376 (1985)); *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) ("courts take all aspects of the relationship into consideration when determining the nature of fiduciary duties flowing between the parties" in an employment context); *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 627 (S.D. Tex. 2011) ("In determining the scope of an employee's fiduciary duty to his employer, Texas courts consider "not only the nature and purpose of the relationship, but also agreements between the agent and principal."). The question of scope was important because fiduciary duties are not unlimited. *See Williams v. Deutsche Bank Sec., Inc.*, No. 04 CIV. 7588 (GEL), 2005 WL 1414435, at *7 (S.D.N.Y. June 13, 2005) ("The scope of the fiduciary duty is a highly fact-sensitive inquiry that depends on the facts of the case."); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199,

---

[2] *Accord Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 281 (Ga. 1998) ("The employee-employer relationship is not one from which the law will necessarily imply fiduciary obligations."); *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 16 (Mo. 2012) ("Generally, an employer-employee relationship, without more, is insufficient to cause a confidential relationship to exist as to knowledge naturally acquired during employment.").

[3] The SEC's attempts to distinguish *Chestman* fail for reasons discussed in Mr. Panuwat's reply brief in support of his motion for a new trial. *See* Reply ISO New Trial Mot. at 3.

214 (Cal. Ct. App. 2007) (noting the scope of a fiduciary duty depends on the nature of the relationship). The Court set this up as a factual question because of the fact-intensive inquiry over scope, but the SEC produced no evidence from which the jury could find the requisite scope.

And even if the jury could have found the existence of a duty under either an employment or entrustment-based theory, as the SEC now claims, the SEC presented no evidence, and indeed misled the jury into believing, that any such duty would not have been modified by contract. *See Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 627 (S.D. Tex. 2011) ("The duties owed by an employee to an employer may be altered by agreement."); *McConnell v. Hunt Sports Ent.*, 725 N.E.2d 1193, 1215 (Ohio Ct. App. 1999) ("[A] contract may define the scope of fiduciary duties between parties to the contract."); *Perry v. Perry Farms, Inc.*, 638 F. Supp. 2d 840, 844 (N.D. Ohio 2009) ("An operating agreement may effectively limit or define the scope of fiduciary duties[.]"). Even if the jury found that Mr. Panuwat owed general employment-based fiduciary duties, to resolve the fact question, it still needed to evaluate both policies to determine whether they modified the scope of any duty. There was insufficient evidence and instruction for the jury to make such a finding.

None of the evidence that the SEC now claims "overwhelming[ly]" supports its theory, Opp. at 13, actually goes to the fact at issue under the appropriate legal framework: whether Mr. Panuwat owed Medivation a duty not to trade in the securities of a company with which it had *no business relationship*. The SEC never believed it had to do anything more than establish a general duty of trust or confidence. *See* Prop'd Joint Jury Instr. at 56. The SEC, in effect, claims only that it presented evidence that Medivation employed Mr. Panuwat, and that he received confidential information related to the deal. *See* Opp. at 13-14. These facts did nothing to establish the scope of any separate trading duties.

The SEC is also wrong that Mr. Panuwat's testimony itself establishes this duty. Opp. at 14. When Mr. Panuwat stated that he understood he was not supposed to use Medivation's confidential information for a personal use, he was not testifying about any objective duty under company policy (indeed, Mr. Panuwat and other defense witnesses were prohibited from offering that critical testimony). At most, Mr. Panuwat's testimony established his subjective understanding only, which

5

is not evidence from which the jury could find the existence of Mr. Panuwat's duty as established by Medivation, objectively. This testimony was not proof that Medivation actually prohibited its employees from trading in the securities of unrelated companies. Moreover, Mr. Panuwat's testimony was vague and did not lay out the contours of any duty with the requisite specificity needed for the jury to conclude that a trade in Incyte violated company policy.[4] Because "a fiduciary duty cannot be unilaterally imposed," *Bahmann v. N.A.*, 2023 WL 5573820, at *2 (M.D. Fla. Aug. 29, 2023); *Chestman*, 947 F.2d at 567, the glaring omission in the evidence is that SEC never presented any testimony from the company about the scope of these duties. *See* Opening Br. at 12-13; New Trial Mot. at 25-26. The jury did not make an appropriate finding on duty.

### B. The jury could not have found a duty not to trade in Incyte under the policies.

The two policies discussed at trial—the Insider Trading Policy and the Confidentiality Policy—also are not sufficient evidence of duty which would encompass the conduct here. *See* Opening Br. 7-10. The former policy does not reach trades in unrelated companies, and the latter policy does not discuss trades at all. *Id.* On top of that, the SEC did nothing more than introduce the policies themselves; it failed to introduce any evidence from Medivation employees (or anyone else) that the policies reached Mr. Panuwat's activity. The only witness who testified on this matter, Jennifer Jarrett, acknowledged that she was subject to a later, amended version of the Insider Trading Policy—*not* the policy applicable to Mr. Panuwat. *Id.* at 9. More to the point, Ms. Jarrett never explained the scope or meaning of the policies. She simply described her own lack of trading. 3/27/2024 Trial Tr. at 490-91. So the SEC grasps at straws by relying exclusively on the text of these inapposite policies.

The SEC effectively acknowledges it did not introduce evidence about the scope of these policies because "its theory at trial was not that the policy prohibited trading in biopharma," but that it "barred employee's from using Medivation's confidential information to trade." Opp. at 16. This misses the mark. The subject matter of the policies (MNPI and confidentiality) was not at issue; instead, the question of fact was whether Medivation prohibited employees from personally

---

[4] Moreover, this testimony is too general to stand for the proposition that Medivation prohibited its employees from *any* and *all* personal use of company property no matter how *de minimus*, and so says nothing about the scope of permissible use.

trading in unrelated companies. The question of scope was critical because, as the SEC now effectively concedes, Medivation had no policy that would have prohibited an employee from trading in Ford Motor Company, *see* Opp. at 15, despite its being a "publicly traded company." It was for the jury to determine whether Incyte was within a prohibited zone of trading. The SEC presented no testimony to aid the jury in resolving this question.

The SEC's attempt to now backfill the gap in evidence by claiming Mr. Panuwat's testimony that he subjectively understood he was not free to use company property to trade fails. Mr. Panuwat was not testifying about the scope of the trading policy. Opp. at 14. The Court should reject the SEC's attempts now to fault Mr. Panuwat for failing to qualify his statement with an analysis of the policies, given the SEC's history of objecting to this issue, and the Court's agreement to preclude such testimony. ECF 98 at 11-12 (arguing that Mr. Panuwat should be precluded from introducing any evidence interpreting the meaning of Medivation's policies); 4/3/2024 Trial Tr. at 1009 (precluding Mr. Panuwat from testifying as to why the policy was ambiguous to him); 4/5/2024 Trial Tr. at 1362-63 (precluding Mr. Panuwat from arguing to the jury that the SEC failed to introduce evidence necessary to establish that the policies prohibited a trade in Incyte). The argument that Ms. Jarrett and Dominic Piscitelli testified about the scope of the policies is also false. Opp. at 17. Neither Mr. Piscitelli nor Ms. Jarrett was ever asked to interpret the policies, and Ms. Jarrett's testimony was about her own lack of personal trading. *See* 3/27/2024 Trial Tr. at 488-91.

Recognizing this critical evidentiary gap, the SEC insists that the plain meaning of the policies established a specific duty not to trade. Opp. at 14, 17. But the SEC did not present any testimony from Medivation employees or anyone else interpreting those policies. That's fatal. The Court ruled that the existence of duty was a factual question for the jury to decide, not a pure question of law, *see* ECF 109 at 18—so the jury needed to have some basis beyond the plain text of the policies to find a duty. (Separately, as argued in his new trial motion, the Court erred by precluding Mr. Panuwat from offering evidence to show that he did not understand Medivation's policies to prohibit his Incyte trade, New Trial Mot. at 18-19). But the sum of these errors was that the SEC did not introduce sufficient evidence that the policies established the requisite duty. As a

7

result of these rulings, there is no direct evidence in the record from which the jury could have appropriately determined the scope of any duty based on the policies, and the only circumstantial evidence in the record supports Mr. Panuwat. Opening Br. at 12. This is precisely the circumstance in which judgment as a matter of law should be granted.

### C. The jury could not have found that Medivation actually guarded its confidential information against a trade in Incyte.

The SEC entirely failed to introduce evidence that Medivation considered and treated its confidential information in "a way that maintained [its] exclusive right to the information," *United States v. Mahaffy*, 693 F.3d 113, 135 n.14 (2d Cir. 2012), for the simple reason that the jury never heard from the company regarding which trading activities were prohibited. There was no witness at trial who spoke on behalf of Medivation. That was a glaring—and fatal—error: The SEC must prove that the employer treated its MNPI in such a way to protect its confidentiality. *See* Opening Br. at 13. The SEC seeks to avoid judgment on this issue by arguing that the Ninth Circuit never adopted *Mahaffy*. Opp. at 18. But that argument fails because this requirement comes from binding Supreme Court precedent in *Carpenter v. United States,* 484 U.S. 19 (1987).

The SEC is also wrong to claim that *SEC v. Talbot*, 530 F.3d 1085 (9th Cir. 2008), required no such proof. Opp. at 18. In *Talbot*, the court recognized that the information given to the defendant in his role as a Fidelity Board member that LendingTree would soon be acquired was not simply confidential as a matter of law, but was confidential as a matter of fact in that "every other director present at the meeting considered the information to be confidential." *Id.* at 1096. If everyone else knew that information received in a board meeting was confidential and did not trade on it, it inherently follows that the company had protected its information. *See id.* This was sufficient evidence of the issue in *Talbot,* and there is no comparably sufficient evidence here.

The SEC asserts a litany of facts that it claims proved Medivation guarded its information as confidential, Opp. at 19, but the items it lists do not satisfy the SEC's evidentiary burden. Mr. Panuwat did not argue that Medivation failed to maintain certain deal-related information as confidential. Instead, Mr. Panuwat argued that Medivation failed to take steps to actually guard its property against an employee's personal trade in another company with which Medivation had no

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

business relationship, like Incyte. To be clear: Medivation never conducted a training, disciplined an employee, instituted a black-out period, or warned employees that they could not trade in another company with which Medivation had no business relationship—and more to the point, the SEC never presented any such evidence. Thus, the SEC did not show that Medivation guarded its information as confidential in such a way that Mr. Panuwat had violated a duty to Medivation. Put differently, the SEC did not show that Mr. Panuwat had misappropriated information from Medivation—which is the core requirement here. The SEC did not believe this evidence was part of its burden and so, naturally, its evidence at trial was devoid of any proof of this fact. This is precisely when judgment as a matter of law is required.

### III. The SEC presented insufficient evidence of breach.

The SEC failed to introduce evidence sufficient to establish breach when it produced no evidence that Mr. Panuwat did anything prohibited by the company. Mr. Panuwat did not speak for the company, and so the SEC's assertion that the jury need only look to his own testimony, *see* Opp. at 20, fails. The SEC offers no other argument in support of this element and does not contest that proof of misconduct was part of its burden. *See id.* This alone is grounds for granting Mr. Panuwat's motion.

However, Mr. Panuwat also argued that the SEC failed to produce evidence of breach when it failed to show that Dr. David Hung's email contained nonpublic information, one of the sub-elements of breach. *See* Opening Br. at 6. The SEC now claims that its evidence of nonpublic information was much broader than just Dr. Hung's email. Opp. at 20-21. The problem with this assertion is that the only nonpublic information the SEC claims caused Mr. Panuwat's trade is the information in Dr. Hung's email, because Mr. Panuwat received no other allegedly nonpublic information seven minutes before he traded. *See* 4/5/2024 Trial Tr. at 1310. The entire linchpin of the SEC's case was Dr. Hung's email. This argument must therefore be rejected.

Finally, Mr. Panuwat is entitled to judgment on the breach element because, crediting Dr. Becker's spillover theory, a reasonable investor had all the information necessary to take advantage of the same trade in Incyte as Mr. Panuwat based entirely on public information. Thus, any information Mr. Panuwat possessed cannot have been material as a matter of law. *See* Opening Br.

9

at 6 (to breach a duty, the SEC must establish that "Mr. Panuwat knowingly or recklessly breached [the specific not to use its information to trade in the securities of Incyte] by misappropriating Medivation's material nonpublic information."). The SEC claims that Mr. Panuwat had more specific information than the rest of the market, Opp. at 22, which misses the mark. The point is that nothing more specific was required for a reasonable investor to understand that buying Incyte call options in mid-to-late August was a good investment, based solely on public information.

The SEC now falsely claims that Dr. Becker did not opine that the spillover from a merger announcement would have been obvious to a reasonable investor in Incyte and, instead, the specific nature of Mr. Panuwat's more detailed information was "critical to predicting that its stock would react enough to result in a spillover effect on Incyte." Opp. at 22-23. This is the only reason which the SEC now points to justify why the information was material. This assertion is flatly contradicted by the evidence the SEC introduced at trial[5] and its own arguments to the jury. 4/5/2024 Trial Tr. at 1309 (In closing the SEC claimed that "the market also perceived that a Medivation acquisition would be good news for Incyte."). The SEC's dramatic change in position now reflects the obvious: That the SEC introduced no evidence to support the materiality of the information it claims prompted Mr. Panuwat to trade. He is therefore entitled to judgment.

### IV. The SEC presented insufficient evidence of causation.

The SEC invited the jury's speculation to establish liability on the causation element. *See* Opening Br. at 19-23. Indeed, the SEC's only evidence of causation was the timing of Mr. Panuwat's trade. That's insufficient as a matter of law. Opening Br. at 19-23; *Lakeside-Scott v.*

---

[5]   3/27/2024 Trial Tr. at 560 (Dr. Becker testified to "three kinds of reasons that market observers would expect Incyte's reaction on August 22."); 570 ("this [analyst report] is direct confirmation of the idea that Medivation's takeover announcement is good news for Incyte, and it would lead somebody to expect Incyte's positive stock price reaction when Medivation's news is announced."); 570 ("[this] confirms my view that industry—market observers would expect Incyte stock to react when Medivation's merger was announced, because it hadn't yet fully reflected the news of Medivation's merger in this analyst's view."); 587 ("My ultimate conclusion is that Incyte's stock price reaction on March 31, 2016, was caused by Medivation's merger news which came on that day, and consequently, this would have led market observers to expect that . . . Incyte's stock price would react to Medivation's news later in August when Medivation's merger news was announced."); 595 ("I concluded that Incyte's stock price reaction on February 25, 2015 was caused by . . . Pharmacyclics' merger announcement and that, as a result, . . . market observers would expect Incyte's stock price to react to Medivation's later announcement on August 22nd, 2016."); 595 ("My conclusion is that market observers would expect Incyte's stock price to increase when Medivation's merger was announced on August 22nd.").

*Multnomah Cnty.*, 556 F.3d 797, 808-09 (9th Cir. 2009). Now, confronted with this fact, the SEC attempts to distinguish the line of cases Mr. Panuwat cites because they are employment, rather than securities, cases. *See* Opp. at 23-24. There is no reason why causation, a standard element of all tort actions, would operate differently in the employment context, and the SEC cites none.

The SEC similarly cites no case where the Ninth Circuit, or any court, upheld a securities verdict where timing was the only fact supporting causation. *See id.* at 23. The Ninth Circuit's decision in *United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998), contained only an academic discussion of the type of evidence that could support the use element. *See id.* at 1069. The court certainly never said that timing alone could sustain a jury's verdict; thus, the Court remains bound by the holding in *Lakeside-Scott*. *See* Opening Br. at 21. The SEC's citation to *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003), is similarly errant as that case did not consider timing related to the causation element at all. The issue there was whether a series of stock sales made by seven directors and board members during an inflated stock price peak over a three-month period (with the crux of the activity occurring in April and May) before a subsequent stock price plummet in September was one among three factors that went to establish that the plaintiff had alleged a "strong inference" of scienter necessary to survive a motion to dismiss under the PLSRA's heightened pleading standards. *Id.* at 938-40. This was not a case where a court was analyzing time between insider tip and trade; it did not analyze causation; it did not address the sufficiency of evidence to uphold a jury verdict; and most critically, the court did not hold that timing was the sole admissible fact going to causation. *See id.*

Moreover, the SEC's claim that the seven-minute gap between the time Dr. Hung emailed Mr. Panuwat and his first Incyte trade creates a strong inference to support the causation element, is inconsistent with its claim about the nonpublic information at issue. *See supra* at 9. The SEC now claims that the MNPI in this case was the entirety of information that Mr. Panuwat received about Medivation's potential acquisition. But of course, there were days—even weeks—between Mr. Panuwat's receipt of that purported MNPI and his Incyte trade. So it is unreasonable to claim that the jury made any appropriate finding on causation because the SEC never even argued that he traded "on the basis of" this other information. *See* 4/5/2024 Trial Tr. at 1310 (arguing only that

the "clearest evidence" of causation "is the timing. He bought Incyte call options seven minutes after he got the Dr. Hung email.").[6]

Mr. Panuwat additionally explained why other evidence—bankers' presentations and analyst commentary—could not have established causation, and though the SEC critiques Mr. Panuwat's analysis, *see* Opp. at 24-26, the SEC does not once claim that the jury did rely or could have relied on these facts to make an appropriate finding on causation, and so forfeits that argument. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 664 F. Supp. 3d 1142, 1165 n.12 (S.D. Cal. 2023) (the failure to argue that the jury had adequate evidence related to an issue results in waiver of that argument).

### V. The SEC presented insufficient evidence of scienter.

The SEC now abandons the arguments it made to the jury in support of scienter. Faced with Mr. Panuwat's assertion that the scienter element of the instructions got the law wrong and thus the SEC failed to produce evidence sufficient for the jury to find scienter, the SEC now pivots and claims the jury could have found scienter based on a different set of facts than those presented at trial. *Compare* Opp. at 26-28 (claiming that evidence of scienter was established by Mr. Panuwat's silence about his trade, "the size and riskiness of his trades," "his evasiveness when asked whether he read Dr. Hung's email," "his lack of candor about whether he worked from the office the day he traded," his claim of diminishing responsibilities around the time of the trade, his pretrial claim that he had not seen prior offers, and his pretrial inability to recall the details of his trade) *with* 4/5/2024 Trial Tr. at 1311-32 (claiming that evidence of scienter was established by the fact that he "admitted that the information he had about the Medivation acquisition was confidential," that this evidence was material, that "[h]e bought the options at the very end of Medivation's acquisition process, seven minutes after" the Dr. Hung email, that "he knew he didn't have Medivation's consent to use this information," that "[h]e admitted that he knew he wasn't suppose to use Medivation's business secrets for his own personal benefit," that "[h]e admitted that he wasn't suppose to use Medivation's

---

[6] The SEC attacks Mr. Panuwat's fairness-based argument regarding its manipulation of impermissible bad act evidence without denying that Mr. Panuwat suffered prejudice in being unable to effectively rebut the SEC's claim that his Incyte trades were stark outliers in his trading history.

12

DEFENDANT'S REPLY ISO RENEWED MOTION FOR JMOL
Case No. 3:21-cv-6322-WHO

confidential information to trade securities," that "he never told anyone about his trades" including his boss, "didn't consult with the company's lawyers," and "didn't even tell" Mr. Piscitelli and therefore never received Medivation's consent). The SEC's failure to defend the jury's verdict now on the grounds it argued to the jury and prosecuted at trial (that scienter was established by his knowledge of MNPI and lack of consent, rather than knowledge of misconduct) implicitly recognizes that the jury instruction was erroneous and its evidence was insufficient. *Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*, 2023 WL 11197097, at *5 (C.D. Cal. Mar. 16, 2023) (judgment as a matter of law is proper when party justifies a verdict based on "an entirely different argument than" what it pursued at trial); *Irwin Katz & Assoc., Inc. v. Concepts in Health, Inc.*, 2017 WL 593502, at *33 (D.N.J. Feb. 14, 2017) (plaintiff could not pursue a different legal theory than the one it "voluntarily prosecuted" at trial to avoid post-trial judgment based on insufficiency of the evidence). The moving party is entitled to judgment when the only evidence supporting an element requires crediting an unreasonable inference. *Adkins v. Corr. Corp. of Am.*, No. CV-12-1615-PHX-SMM, 2015 WL 631161, at *1 (D. Ariz. Feb. 13, 2015). It would have been unreasonable for the jury to find scienter based on a wholly separate set of facts and different theory than the one the SEC asserted at trial.  Because the jury could not have made an appropriate finding on scienter, Mr. Panuwat is entitled to judgment.

## VI. Conclusion

For the reasons set forth above, Mr. Panuwat is entitled to judgment.

Dated: July 3, 2024                                        SPERTUS, LANDES & JOSEPHS, LLP


By: /s/ Anthony Pacheco
    Anthony Pacheco

    Attorney for Defendant
    Matthew Panuwat